[No. 23235-5-I.   Division One.   January 8, 1990.]

AETNA LIFE INSURANCE COMPANY, *Plaintiff*, v. DEBBIE
BOOBER, *Appellant*, MARILYN BOOBER, *as
Guardian ad Litem, Respondent.*

568

*Grace S. Wagner,* for appellant.

*Kent Millikan* and *Cogdill, Deno, Millikan & Carter,* for respondent.

FORREST, J.—Debbie Boober, the surviving spouse of Alan Boober, appeals from the trial court's grant of summary judgment to Marilyn Boober, awarding her, as guardian ad litem for Joshua Boober, all proceeds from a term life insurance policy. We reverse.

Marilyn Boober obtained a decree of dissolution from Alan Boober on March 13, 1981. The decree awarded her care, custody and control of Joshua, their only son. Marilyn is guardian ad litem for Joshua in this action.

Alan married Debbie Boober, his surviving spouse, on April 16, 1983. Alan and Debbie apparently had a difficult marriage. Alan accepted a job in California toward the end of 1985. Alan and Debbie thereafter lived apart, despite

Alan's return to Washington in April 1986. Alan reportedly had relationships with other women during their separation. Debbie gave birth to another child, whose father was not Alan, during that time. Nonetheless, the parties never sought a dissolution of their marriage.

In fact, according to Debbie's affidavit, she and Alan continued to interact positively. They provided emotional support and comfort to each other during stressful periods. He made repairs to Debbie's car. They socialized and appeared in public together. She assisted him in finding employment by typing and mailing letters and resumes. They continued having sexual relations. Debbie attended a support group and sought family counseling after Alan completed an alcohol rehabilitation program.

Alan was hired by the Boeing Company and began his new job in August 1987. He received a group term life insurance policy as a benefit of his employment. He designated Joshua, his son by his previous wife, as sole beneficiary. After Alan's death on December 10, 1987, Aetna Life Insurance Company paid the proceeds into court to resolve conflicting claims. On cross motions for summary judgment, the trial court granted summary judgment to Marilyn Boober as guardian ad litem for Joshua, awarding all proceeds from the life insurance policy to him. It denied Debbie Boober's cross motion for summary judgment requesting one–half of the proceeds.

### Was the Marriage Defunct?

██ The general rules governing ownership of life insurance proceeds are well established. A surviving spouse has a community property interest in a life insurance policy to the extent community funds are used to purchase the policy.[1] Under the "risk payment doctrine", ownership of term life insurance proceeds depends on the character of the funds used to pay the premium for the most recent

---

[1] *Aetna Life Ins. Co. v. Bunt*, 110 Wn.2d 368, 754 P.2d 993 (1988).

term.[2] If the term policy is a fringe benefit of a married employee's job, it is presumptively community property.[3]

The presumption that proceeds are community property can only be overcome by clear and convincing proof, with the burden resting on the person asserting the separate nature of the property.[4] If a term policy is community property and the surviving spouse is not the named beneficiary, the surviving spouse is entitled to one–half of the proceeds.[5]

Respondent asserts, however, that the foregoing rules are inapplicable and that Alan's earnings (and, hence, his term life insurance policy) were his separate property because Debbie and Alan were living "separate and apart" within the meaning of RCW 26.16.140 at Alan's death.[6] Living "separate and apart" requires more than mere physical separation. In *Rustad v. Rustad*,[7] for instance, the spouses were physically separated because the wife was confined to a mental institution in another state. The husband did not seek dissolution and served as custodian of her estate from 1950 until his death in 1953. The court held land acquired after the husband moved to Washington without his wife was community property because the record was devoid of any evidence showing the parties had renounced their marriage.

---

[2]*Aetna Life Ins. Co. v. Wadsworth*, 102 Wn.2d 652, 689 P.2d 46 (1984).

[3]*Bunt*, at 371–72.

[4]*Porter v. Porter*, 107 Wn.2d 43, 726 P.2d 459, 68 A.L.R.4th 859 (1986).

[5]*Francis v. Francis*, 89 Wn.2d 511, 573 P.2d 369 (1978).

[6]This statute reads:
"When a husband and wife are living separate and apart, their respective earnings and accumulations shall be the separate property of each. The earnings and accumulations of minor children shall be the separate property of the spouse who has their custody or, if no custody award has been made, then the separate property of the spouse with whom said children are living."

[7]61 Wn.2d 176, 377 P.2d 414 (1963).

In *In re Estate of Nikiporez*,[8] the spouses had been physically separated for 30 years. The court found, however, that the husband had a desire to reunite with his wife, and that physical difficulties had prevented the reunion. Hence, the parties had not renounced their marital relationship and the surviving spouse was entitled to an award in lieu of homestead.

An examination of the cases holding that the marriage was defunct is instructive. In *MacKenzie v. Sellner*,[9] the wife had commenced a divorce, the parties were living separate and apart and a voluntary property settlement had been reached prior to the accident which generated the litigation. The court held that the marriage was defunct.

In *Togliatti v. Robertson*,[10] the parties had secured an interlocutory decree of divorce but never procured the final decree. The court held that although the dissolution action lapsed upon the death of one of the spouses, the property purchased 16 years after entry of the interlocutory decree was the decedent spouse's separate property. Similarly, in *In re Estate of Osicka*,[11] the marriage was held defunct when the parties had been separated for 9 years and had signed a separation agreement releasing each of them from support or alimony obligations.

The rule distilled from these cases is well stated in *Oil Heat Co. of Port Angeles, Inc. v. Sweeney*, 26 Wn. App. 351, 354, 613 P.2d 169 (1980):

> [M]ere physical separation of the parties does not establish that they are living separate and apart sufficiently to negate the existence of a community. . . . The test is whether the parties by their conduct have exhibited a decision to renounce the community, with no intention of ever resuming the marital relationship.

---

[8]19 Wn. App. 231, 574 P.2d 1204, *review denied*, 90 Wn.2d 1013 (1978).

[9]58 Wn.2d 101, 361 P.2d 165 (1961).

[10]29 Wn.2d 844, 190 P.2d 575 (1948).

[11]1 Wn. App. 277, 461 P.2d 585 (1969).

Marriage is based on mutual consent. Either party may withdraw consent by dissolving the marriage. Indeed, special provisions have been made for pro se proceedings to minimize financial and procedural impediments to dissolution.[12] Plainly, spouses can best judge the viability of their marriage. When they have not yet chosen to institute dissolution proceedings, the continued integrity of their marriage should be presumed except under the most unusual circumstances.

For purposes of summary judgment, the facts and reasonable inferences therefrom contained in Debbie Boober's affidavit are accepted as true. The time of separation between Alan and Debbie Boober was relatively short, no dissolution proceeding was commenced, no separation agreement was signed and the parties continued to positively interact. Marilyn Boober's statements alleging that Debbie had an illegitimate child, that Debbie and Alan each had temporary relationships with others and that they did not share the same residence for several years are insufficient to overcome the presumption of the continued validity of the marriage. The trial court erred in granting summary judgment to Marilyn Boober as guardian ad litem for Joshua Boober.

*Aetna Life Ins. Co. v. Bunt,*[13] relied upon by respondent, does not require a different result. It recognizes a narrow exception to the community property rights of the surviving spouse where a prior decree of dissolution has ordered the decedent spouse to maintain insurance coverage in favor of a child of the prior marriage.[14] The decree between

---

[12]RCW 26.09.030.

[13]110 Wn.2d 368, 754 P.2d 993 (1988).

[14]*Porter v. Porter,* 107 Wn.2d 43, 726 P.2d 459, 68 A.L.R.4th 859 (1986), which awarded a surviving spouse her community property share of a term life insurance policy despite a clause in the decree of dissolution requiring the decedent to name his child as beneficiary, was distinguished by the *Bunt* court, which stated: "Although the change of beneficiary in [*Porter*] violated the court decree, the deceased had made alternative arrangements that effectuated the underlying

Alan and Marilyn did not require Alan to maintain insurance in favor of Joshua. Accordingly, the *Bunt* case is inapposite.

## DEADMAN'S STATUTE

In light of our disposition of the case, it is unnecessary to consider the error assigned to the trial court's admission of Marilyn Boober's affidavit. In the event of trial, however, there will be an issue as to whether her statement is precluded by the "deadman's statute", RCW 5.60.030.[15]

▆▆ The meaning of "party in interest" under the statute is explained in *Adams Marine Serv., Inc. v. Fishel*, 42 Wn.2d 555, 562, 257 P.2d 203 (1953):

The interest which will work a disqualification of a witness under this statute must be a direct and certain interest in the outcome of the litigation, the test being whether he will either gain or lose by the direct legal operation and effect of the judgment of the court in the action in which his competency is challenged.

A party who is merely interested in the result of the case, as Marilyn Boober undoubtedly is, does not make one a

---

purpose and intent of the decree." *Bunt*, at 375. *See* Note, *The Community Property Goliath Defeats Enforcement of Child Support*, 23 Gonz. L. Rev. 481 (1987–1988).

[15]This statute reads:

"No person offered as a witness shall be excluded from giving evidence by reason of his or her interest in the event of the action, as a party thereto or otherwise, but such interest may be shown to affect his or her credibility: *Provided, however,* That in an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, or as deriving right or title by, through or from any deceased person, or as the guardian or limited guardian of the estate or person of any incompetent or disabled person, or of any minor under the age of fourteen years, then a party in interest or to the record, shall not be admitted to testify in his or her own behalf as to any transaction had by him or her with, or any statement made to him or her, or in his or her presence, by any such deceased, incompetent or disabled person, or by any such minor under the age of fourteen years: *Provided further,* That this exclusion shall not apply to parties of record who sue or defend in a representative or fiduciary capacity, and have no other or further interest in the action."

"party in interest".[16] Numerous jurisdictions have held that a guardian, even if a presumably interested parent, may testify on behalf of the ward without violating the deadman's statute.[17] Further, a party may testify as to her impressions, previously unexpressed to the decedent, so long as her testimony does not reveal a statement made by the decedent or relate to a transaction with him.[18] Hence, Marilyn's affidavit was properly considered by the court.

■ Moreover, insurance proceeds are nontestamentary and usually pass outside the decedent's estate.[19] When a personal representative seeks the proceeds of a life insurance policy for herself, she acts in her individual capacity.[20] The deadman's statute is intended to protect the decedent's interests and may be invoked by his legal representative while acting in a representative capacity.[21] Here,

---

[16]*Fies v. Storey,* 21 Wn. App. 413, 585 P.2d 190 (1978), *overruled on other grounds in Chaplin v. Sanders,* 100 Wn.2d 853, 676 P.2d 431 (1984).

[17]*See Dieter v. Byrd,* 235 Ark. 435, 360 S.W.2d 495, 497–98 (1962); *Gay v. Gay,* 308 Ky. 539, 215 S.W.2d 92, 94 (1948); *Begovich v. Kruljac,* 38 Wyo. 365, 267 P. 426, 60 A.L.R. 1046 (1928); *Johnson v. Johnson,* 105 Md. 81, 65 A. 918 (1907).

[18]*Dwelley v. Chesterfield,* 88 Wn.2d 331, 334, 560 P.2d 353 (1977).

[19]RCW 11.02.090; *Francis v. Francis,* 89 Wn.2d 511, 516, 573 P.2d 369 (1978).

[20]*Wilson v. Wilson,* 35 Wn.2d 364, 367, 212 P.2d 1022 (1949), *overruled on other grounds in Francis v. Francis,* 89 Wn.2d 511, 573 P.2d 369 (1978); *In re Will of Ziolkowski,* 47 Misc. 2d 752, 263 N.Y.S.2d 72 (1965) (executor, who was named beneficiary of life insurance policy, took proceeds in his individual capacity, and not in his representative capacity); *Cook v. Cook,* 521 S.W.2d 808 (Tenn. 1975) (beneficiary of life insurance policy did not take proceeds in representative capacity as executor, but in his individual capacity); *cf. Harvey v. Pocock,* 100 Wash. 263, 170 P. 545 (1918) (executrix of nonintervention will, who was sole heir and legatee, could make a claim against the estate in her representative capacity).

[21]As stated in 3 S. Gard, *Jones on Evidence* § 20:22, at 634–35 (6th ed. 1972):
"The mere fact that a representative is a party to the action does not make the adverse party incompetent to testify to transactions or communications with the deceased or incompetent person; the [deadman's] statute applies only where the representative is a party in his representative capacity; if he seeks judgment in favor of himself or defends personally, the case does not fall within the statutes

Debbie sought to invoke the statute against Marilyn's affidavit. Debbie, however, is seeking the insurance proceeds in her individual capacity. Therefore, she is not entitled to use the statute to assist her.

Reversed and remanded for further proceedings not inconsistent with this opinion.

SWANSON and WEBSTER, JJ., concur.

unless he comes within some other protected class, such as an heir, devisee, legatee, assignee, etc. under some statutes."