VITO P. DeBENEDICTIS, *Appellant*, v. JAMES V. HAGEN,
ET AL, *Respondents*.

*Arnold B. Robbins* and *Breskin & Robbins,* for appellant.
*John M. Harbaugh,* for respondents.

MORGAN, J. — After a bench trial, the trial court dismissed Vito D. DeBenedictis' claims against James V. Hagen and James E. Novak. It also granted reasonable attorney fees to Novak. DeBenedictis appeals, and we affirm.

In 1988, Novak and Hagen were long-time friends. On November 6, 1988, Novak agreed to lend Hagen $50,000. Novak orally agreed to accept monthly payments and a 10 percent interest rate. Novak gave Hagen a check for $50,000, and Hagen gave Novak a written receipt.

Hagen made payments for 16 months. He stopped, however, in May 1990. At that time, he owed $44,320.02.

Novak believed that Hagen could make monthly payments if so motivated. Thus, on August 2, 1990, he asked Vito DeBenedictis, the proprietor of Interstate Collection Service (ICS), to aid in collecting the debt.

Events from August 2 to the end of August lie at the core of the present dispute. The parties agree that on August 2, DeBenedictis asked Novak to sign a printed form, and Novak complied. The form provided:

> For the purpose of collection, I/WE hereby assign, transfer, set over and sell all my right, title, and interest in this claim with full authority to sue, compromise, or adjust the same and authorize reassignment. . . . Recovered monies may be applied first to advanced costs of suit, including attorneys fees, and the assignee is accountable for the obligation to the extent of the principal amount only.[1]

The form did not address the nature of the parties' relationship or DeBenedictis' compensation. It recited that the debt was for $50,000, even though the principal owed at that time was $44,320.

The parties disagree on what they said to each other just before Novak signed the form. According to Novak, DeBenedictis said:

> Don't worry about [the form]. [T]he deal you and I have worked out will take care of it. This is a formality and it's something that has to be done to — for me to take the case. It's just strictly a formality.[2]

According to DeBenedictis, he told Novak

> that once you sign your name to this documentation here, this paperwork, you really don't have anything to do with us, with the claim, because, you know, we work on a commission basis and, you know, we want to make sure that you understand that this claim has been assigned to our office. Once you agree for us to work the claim, you have to sign this agreement because, you know, we don't get paid unless we recover the money.[3]

The parties disagree over what Novak said regarding control of the collection process. According to Novak, he told DeBenedictis that he and Hagen were friends, and that he did not want an attorney involved. He stated "in no uncertain terms" that his "primary interest [was] that Mr. Hagen

---

[1]Pl.'s Ex. 2.

[2]Report of Proceedings, at 78.

[3]Report of Proceedings, at 17.

. . . start making the payments again on a monthly basis", and that he, Novak, "was hoping that [DeBenedictis] was gonna jack the man up and get him to start making payments".[4] According to DeBenedictis, Novak said, "I don't care what you do to that man."[5] "Whatever you want to do, whatever way you want to do it, you just get me my money. Just get me my money."[6]

The parties disagree over what was said regarding the amount of DeBenedictis' compensation. According to Novak, DeBenedictis said his fee would be "15 percent on three or four months of back payments".[7] According to DeBenedictis, Novak agreed to a fee of "15 percent of the $50,000", or, if it became necessary to use legal counsel, to a fee of 35 percent.[8] Novak also agreed DeBenedictis could "keep the interest".[9]

The parties disagree over what Novak said concerning the principal amount of the debt on August 2. According to Novak, he told DeBenedictis that Hagen had made payments, and that the debt was presently less than $50,000. According to DeBenedictis, Novak showed him the original check and receipt and said Hagen had made no payments.

The parties disagree over the events that occurred during the 3 weeks following August 2. In mid-August, according to Novak, DeBenedictis wanted to turn the matter over to an attorney. Responding "That is not the way it's supposed to be",[10] Novak told DeBenedictis "to stop all work on the case".[11] DeBenedictis, however, says that he tried several times to contact Hagen. When finally he succeeded, Hagen said, "I'm

---

[4]Report of Proceedings, at 76.

[5]Report of Proceedings, at 15.

[6]Report of Proceedings, at 16.

[7]Report of Proceedings, at 76-77.

[8]Report of Proceedings, at 15.

[9]Report of Proceedings, at 15.

[10]Report of Proceedings, at 80.

[11]Report of Proceedings, at 81.

not gonna pay this bill." DeBenedictis then told Novak, "I'm gonna go to my attorney and we're gonna try to tie up every asset that this Mr. Hagen has." Novak responded, "No problem." Later, however, Novak told him to stop work because Novak "was gonna get paid".[12] DeBenedictis then stopped work.

On September 7, 1990, Novak settled with Hagen in a fashion satisfactory to both. DeBenedictis had no part in the settlement.

In November 1990, DeBenedictis sued Novak and Hagen.[13] He claimed against Hagen for the amount of the debt, computed as if there had been no settlement. He claimed against Novak for damages caused by breach of contract.

In October 1992, at a bench trial, the trial court heard testimony from DeBenedictis, Novak, and Hagen. The trial court found that Novak was credible but DeBenedictis was not. It found that the parties had not intended a complete sale; rather, they intended a principal-agent relationship. It found that Novak had terminated the relationship before settling with Hagen, and that DeBenedictis had no right to damages for breach of contract. Based on these findings, it dismissed DeBenedictis' claims, and awarded Novak $2,500 in reasonable attorney fees. The record does not disclose the basis for the award of attorney fees.

On appeal, DeBenedictis argues that the trial court erred by dismissing his claim against Hagen, and by dismissing his claim against Novak.[14] Novak argues that he is entitled to reasonable attorney fees on appeal. Hagen moves to dismiss his cross appeal, and we grant that motion. RAP 17.4(d).

---

[12]Report of Proceedings, at 25.

[13]DeBenedictis filed two separate suits, but they were later consolidated.

[14]DeBenedictis also assigns error to the trial court's award of reasonable attorney fees, but he fails to offer any argument that would support the assignment. Thus, he fails to demonstrate that the trial court erred, and we presume that its ruling on fees was correct. *Mattice v. Dunden*, 193 Wash. 447, 450, 75 P.2d 1014 (1938); *Greene v. National Sur. Co.*, 140 Wash. 230, 248 P. 803 (1926); *see Leppaluoto v. Eggleston*, 57 Wn.2d 393, 401, 357 P.2d 725 (1960) (findings presumed correct); *Brick v. Seattle*, 159 Wash. 413, 415, 293 P. 453 (1930) (interlocutory ruling presumed correct).

## DeBenedictis' Claim Against Hagen

DeBenedictis claims that he is entitled to judgment against Hagen for the amount of Hagen's debt, computed without regard to Hagen's settlement with Novak. His central assertion is that the August 2 transaction was a complete sale, from Novak to him, of Novak's claim against Hagen. Based on this assertion, he reasons that after August 2, Novak's claim against Hagen "was no longer his [Novak's] property";[15] that Novak "could not settle a claim he no longer owned";[16] that Novak's settlement with Hagen was "without legal effect";[17] and that the case "should have been resolved by awarding the judgment against Mr. Hagen for principal and interest due on the note".[18]

To analyze this claim, we distinguish between two kinds of assignments. On the one hand, a creditor/assignor can assign his or her claim against a debtor in such a way as to effect a complete sale of the claim. An example is the business that sells a group of accounts receivable; frequently, it will convey its entire ownership interest in exchange for a cash payment. *Cf.* 6A C.J.S. *Assignments* § 96, at 752-53 (1975).

■■ On the other hand, a creditor/assignor can assign his or her claim against a debtor for purposes of collection. Such an assignment transfers legal title to the claim, so the assignee can sue in his or her own name. *Washington State Bar Ass'n v. Merchants' Rating & Adjusting Co.,* 183 Wash. 611, 616, 49 P.2d 26 (1935); *National Ass'n of Creditors v. Grassley,* 159 Wash. 185, 187, 292 P. 416 (1930); *Olsen v. Hagan,* 102 Wash. 321, 327, 172 P. 1173 (1918); *Yamamoto v. Puget Sound Lumber Co.,* 84 Wash. 411, 414, 146 P. 861 (1915); *McDaniel v. Pressler,* 3 Wash. 636, 638, 29 P. 209 (1892). As DeBenedictis acknowledges,[19] this leaves equit-

---

[15]Br. of Appellant, at 14.

[16]Br. of Appellant, at 14.

[17]Br. of Appellant, at 14.

[18]Br. of Appellant, at 15.

[19]Br. of Appellant, at 13, 14.

able ownership with the creditor/assignor. *See Garren v. Saccomanno,* 86 Idaho 268, 275, 385 P.2d 396, 400 (1963); 15A Am. Jur. 2d *Collection and Credit Agencies* § 7, at 197 (1976). The resultant split in ownership gives rise to a fiduciary relationship between the assignor and assignee, *McNeal v. Steinberger,* 192 Okla. 283, 284, 135 P.2d 490, 492 (1943); 15A Am. Jur. 2d § 2, at 188, and the relationship generally is one of principal-agent.[20] *McNeal,* at 283-84; *United Radio, Inc. v. Cotton,* 61 Ohio App. 247, 251, 22 N.E.2d 532, 534 (1938); Restatement (Second) of Agency § 14G, at 70-71 (1958);[21] 15A Am. Jur. 2d § 2, at 188; *see Gibbs v. Giering,* 183 So. 2d 459, 463 (La. Ct. App. 1966). Subject to exceptions not pertinent here, the principal can revoke the agent's authority at any time; if the revocation is a breach of contract, the agent can claim damages, but in no event may the agent continue to act on behalf of the principal. *State ex rel. Everett Trust & Sav. Bank v. Pacific Waxed Paper Co.,* 22 Wn.2d 844, 855, 157 P.2d 707, 159 A.L.R. 297 (1945); *Arcweld Mfg. Co. v. Burney,* 12 Wn.2d 212, 221-22, 121 P.2d 350 (1942); Restatement (Second) of Agency ch. 5, Topic 1, Introductory Note, at 274-75.

The trial court had the task of ascertaining the parties' intent. *Berg v. Hudesman,* 115 Wn.2d 657, 663, 801 P.2d 222 (1990). It was to do that by examining the parties' objective manifestations. *Multicare Med. Ctr. v. Department of Social & Health Servs.,* 114 Wn.2d 572, 587, 790 P.2d 124 (1990). Subject to that limitation, it was entitled to consider not only the printed form signed August 2, but also the context in which that form was executed. *Berg,* 115 Wn.2d at

---

[20]It would appear that the relationship is analogous to that which arises between client and attorney when the attorney is hired on a contingent fee basis. *See Washington State Bar Ass'n v. Merchants' Rating & Adjusting Co.,* 183 Wash. 611, 49 P.2d 26 (1935).

[21]Restatement § 14G provides: "An assignee of a claim is an agent of the assignor only if the latter retains an interest in, and control over, the claim." Comment a to the same section states:

"An assignment may be made either to expedite the collection of a claim, or to transfer ownership of it or of a security interest in it. If the assignee is to account for the proceeds to the assignor, he is normally the latter's agent. . . ."

667-69. It rejected DeBenedictis' assertion that the August 2 transaction effected a complete sale, finding instead that the parties had entered into a principal-agent relationship. It further found that Novak had terminated that relationship before settling with Hagen, and thus that DeBenedictis had no claim against Hagen.

We must uphold the trial court's findings if they are supported by substantial evidence. *Johnny's Sea Food Co. v. Tacoma*, 73 Wn. App. 415, 418, 869 P.2d 1097 (1994). In deciding whether there is, we must take the record in the light most favorable to Novak and Hagen. *Thompson v. Grays Harbor Comm'ty Hosp.*, 36 Wn. App. 300, 302, 675 P.2d 239 (1983). Thus, we ask whether the record, taken in the light most favorable to Novak and Hagen, contains substantial evidence that Novak and DeBenedictis intended an assignment for collection and, consequently, a principal-agent relationship.

We answer in the affirmative. The first sentence of the printed form says, "I/WE hereby assign, transfer, set over and sell all my right, title, and interest in this claim with full authority to sue, compromise, or adjust the same and authorize reassignment." The first sentence also says, however, that the assignment is "for the purpose of collection". Thus, the first sentence can be read in either of two ways: as manifesting intent to make a complete sale, or as manifesting intent to make an assignment for collection.

The third sentence of the printed form says that DeBenedictis will be "accountable" to Novak for the "principal amount" of Novak's claim. It clearly contemplates that Novak was to continue to own the claim and its proceeds, for if that were not true, there would be no reason for DeBenedictis to be "accountable" to Novak. Thus, the third sentence contravenes the idea of a complete sale, and manifests intent to make an assignment for collection.

The consideration flowing from Novak to DeBenedictis was a promise to pay a contingent fee. If the parties had intended a complete sale, the consideration given to DeBenedictis would have been the claim, rather than a fee. Thus,

the consideration flowing from Novak to DeBenedictis contravenes the idea of a complete sale, and manifests intent to make an assignment for collection.

The consideration flowing from DeBenedictis to Novak was a promise to make reasonable efforts to collect the claim. When parties intend a complete sale, the consideration flowing from assignee to assignor is generally a promise to pay, or the actual payment of, cash or other property. It is not merely a promise to make reasonable efforts to collect a claim. Thus, the consideration flowing from DeBenedictis to Novak manifests intent to make an assignment for collection.

In middle or late August, when Novak became unhappy with DeBenedictis' efforts, he told DeBenedictis to stop work, and DeBenedictis complied.[22] This is inconsistent with De-Benedictis' being the owner of the claim, and supports an inference that the parties intended an assignment for collection.

Cumulated, the foregoing evidence supports a reasonable inference that the parties intended an assignment for collection rather than a complete sale. It also supports the trial court's determination that the parties created a principal-agent relationship, and that Novak terminated that relationship before he settled with Hagen. It makes no difference whether Novak's termination was rightful or wrongful, for in either case DeBenedictis' only remaining right was to claim damages against Novak for breach of contract. The trial court did not err by dismissing DeBenedictis' claim against Hagen.

### DEBENEDICTIS' CLAIM AGAINST NOVAK

As an alternative to judgment against Hagen, DeBenedictis seeks damages from Novak. He reasons that even if the August 2 transaction did not effect a complete sale of Novak's claim, it resulted in a contract. It is his view that Novak

---

[22]On the matter of stopping work, DeBenedictis testified as follows:

"Q: . . . [W]hen he told you to stop collecting the account you did stop collecting?

"A: He told me to drop it, he's satisfied, and that's the end.

"Q: That's the end.

"A: That's the end." Report of Proceedings, at 52.

breached that contract, and that he, DeBenedictis, is entitled to damages in the amount of his 35 percent contingent fee.

We assume that the August 2 transaction resulted in a contract between Novak and DeBenedictis, and that Novak breached that contract when he ordered DeBenedictis to stop work. Nonetheless, we conclude that DeBenedictis lacks a valid claim.

■ When an agent is working for a contingent fee, and the principal wrongfully terminates the agent's authority before the contingency has occurred, the agent's damages are not the fee that would have been earned had the contingency occurred. Rather, the agent "is relegated to the remedy of a judgment against his client upon a *quantum meruit* for the services rendered up to the time of the unlawful discharge". *Hamlin v. Case & Case, Inc.,* 188 Wash. 150, 153, 61 P.2d 1287 (1936).

■ During trial, DeBenedictis did not introduce evidence from which the trial court could have determined the reasonable value of services rendered before his discharge. Indeed, he forthrightly acknowledged to this court at oral argument that he had expended little time before discharge, and that the reasonable value of services rendered before discharge would be only a small sum. He did not produce evidence from which to infer damages according to the proper measure of damages, and his claim against Novak was properly dismissed.

### Novak's Claim for Reasonable Attorney Fees On Appeal

■ In claiming reasonable attorney fees on appeal, Novak relies on MAR 7.3. It provides in part:

> The court shall assess costs and reasonable attorney fees against a party who appeals the award and fails to improve the party's position on the trial de novo.

The record in this case does not show whether DeBenedictis or Novak appealed to the superior court.[23] Without such a

---

[23]Given the record before us, the fact that the Superior Court awarded fees does not indicate that DeBenedictis was the party who appealed to superior

showing MAR 7.3 cannot be applied. Thus, we deny No-vak's request for reasonable attorney fees on appeal.

Affirmed.

HOUGHTON, A.C.J., and BRIDGEWATER, J., concur.

court. The record does not show the basis upon which the Superior Court awarded reasonable fees, and we have no way of knowing whether it thought the requirements of MAR 7.3 had been met.