[No. 19498-8-II. Division Two. September 12, 1997.]

*In the Matter of the Marriage of* SHERYL PAGE
(BURGESS) BOISEN, *Appellant*, and MALCOLM BURGESS,
*Respondent.*

*Merrifield B. Rees* and *McCormick, Hoffman, Rees, Faubion, Van Buskirk, Johnson & McLeod, P.S.,* for appellant.

914

*Joel E. Bradshaw* and *Bradshaw & Richards, P.S.,* for respondent.

MORGAN, J. — Sheryl Page Boisen sued Malcolm Burgess for one-half of the college expenses incurred by their two children. The trial court dismissed the action because all of the children's expenses had been paid by a third party. Ms. Boisen appeals, and we affirm.

Ms. Boisen married Malcolm Burgess in 1964. They had a child, Arden, on September 6, 1969, and another child, Kevin, on June 10, 1971. They separated on December 21, 1973, and obtained a decree of dissolution on January 23, 1975.

On December 20, 1974, Ms. Boisen and Mr. Burgess executed a written separation agreement. It provided that Ms. Boisen would have custody of the two children, and that Mr. Burgess would pay child support, including "one-half of the board, room, tuition, and books and other necessary expenses for a four-year college education of each child."[1] The ensuing dissolution decree reiterated the same provisions.

In October 1975, Ms. Boisen married Dr. Elliot Boisen. At the times relevant here, they lived with the children in Tacoma, and Dr. Boisen worked as a physician for the Veterans' Administration (VA).[2]

In July 1987, Dr. Boisen and Ms. Boisen separated. He moved to Alaska, where he continued to work as a VA

---

[1] Clerk's Papers at 30.

[2] The parties present much material about the Boisens living in Okinawa, but none of it is material to this appeal.

physician. She and the children remained in Tacoma. They never attempted to reconcile, according to the trial court's findings.

Dr. Boisen filed for divorce in 1989 and obtained a final decree on December 20, 1991. The decree did not require him to pay child support.[3]

Meanwhile, Arden started college in the fall of 1987 and graduated in December 1992. Kevin started college in the fall of 1989 and graduated in June 1994. Together, the two children incurred college expenses of $211,796.

Between August 1987 and June 1994, Dr. Boisen paid the entire $211,796 directly to the children, their college, and their creditors. According to the trial court's findings, he paid using the earnings from his Alaska job. He paid not because he was required to, but because he "felt that it was the right thing to do."[4]

In June 1994, Ms. Boisen sued Mr. Burgess to recover one-half of the $211,796, or $105,898. She alleged, in a document that appears to have been her original pleading, that "MALCOLM BURGESS [ ] was ordered to pay these expenses pursuant to the Separation Agreement of December 20, 1974 . . . [and] that MALCOLM BURGESS has failed and refused to pay said expenses."[5]

Trial was held on March 20, 1995. After hearing testimony from Ms. Boisen, Dr. Boisen and Mr. Burgess, the trial court ruled that Dr. Boisen had paid the $211,796 out of his separate property and, concomitantly, that Ms. Boisen had "not provided funds towards the parties' two children's post-secondary education costs."[6] It further ruled, at least implicitly, that Dr. Boisen's payments would be credited one-half to Ms. Boisen and one-half to Mr. Burgess. Thus, it appears to have reasoned that Mr. Burgess was obligated to pay one-half of the children's col-

---

[3]*See* RCW 26.16.205.

[4]Report of Proceedings at 58.

[5]Clerk's Papers at 1.

[6]Clerk's Papers at 16.

lege expenses ($105,898); that Mr. Burgess was entitled to a credit of one-half of Dr. Boisen's payments ($105,898); and thus that Mr. Burgess "has satisfied all child support requirements" related to the children's college expenses.[7] When it dismissed the action with prejudice, Ms. Boisen filed this appeal, in which she now seems to assert two alternative theories of recovery.

## I.

Ms. Boisen first claims reimbursement. At least implicitly, she asserts that the trial court erred by holding that she contributed nothing to the children's college expenses. In fact, she says, she contributed $211,796, and she is entitled to have Mr. Burgess reimburse her for one-half that amount, pursuant to the 1974 settlement agreement. As she puts it in her brief, she "expended the sum of $211,796 for a four-year education for each of the children; and she should be entitled to reimbursement from the children's father for 50 percent of that amount."[8]

The premise underlying this theory is that Ms. Boisen paid the children's college expenses. In formulating and maintaining that premise, she does not dispute that Dr. Boisen was the actual payer of the $211,796. She argues, however, that he paid using money that belonged to the Boisen marital community (i.e., to the marital community composed of him and her), and thus that she was a co-payer of the entire amount. She does not contend, nor could she contend on the basis of this record, that she paid the children's college expenses using money that was her separate property.[9]

The trial court rejected Ms. Boisen's argument that Dr.

---

[7]Clerk's Papers at 15.

[8]Brief of Appellant at 10.

[9]The record clearly shows that Dr. Boisen earned all, or virtually all, of the $211,796 by working at his job in Alaska. He later gave that sum directly to the children, not to Ms. Boisen. It was initially his separate property, and then the children's separate property. It was never Ms. Boisen's separate property.

Boisen paid with money belonging to the Boisen marital community. It based its rejection on RCW 26.16.140, and on two essential propositions of fact.

■ RCW 26.16.140 provides in pertinent part:

> When a husband and wife are living separate and apart, their respective earnings and accumulations shall be the separate property of each. . . .

For purposes of this statute, a husband and wife live separate and apart when they have separated permanently rather than just physically,[10] when they no longer have the will to continue the marital relationship,[11] or when they manifest "a decision to renounce the community, with no intention of ever resuming the marital relationship."[12] Each of these expressions is synonymous with the others.

The trial court's first essential proposition of fact, expressed in Findings of Fact 5 and 6 and Conclusion of Law 3 (part of which is a mislabeled finding of fact), was

---

The dissent quotes Dr. Boisen's statement, made in a 1995 deposition, that he was paying out of "community funds." But the trial court, not the witness, had the task of characterizing the funds from which his payments were made, and substantial evidence supports the trial court's contrary analysis.

The dissent also implies, by quoting from the same deposition, that Dr. Boisen wanted Ms. Boisen to recover from Mr. Burgess. Even if Dr. Boisen's wishes are as the dissent asserts, however, they are not relevant to this action. Ms. Boisen does not sue as his assignee; rather, she sues on the basis of her own rights. To the extent she has such rights, they arise out of the 1974 separation agreement. Dr. Boisen was not a party to that agreement, and whatever wishes he might have formed in the late 1980s can have no impact on its meaning.

Finally, the dissent states that Dr. Boisen "was expecting ultimately to be reimbursed." That does not seem consistent with the tenor of most of his testimony, but, even if it is, it is irrelevant because Dr. Boisen is not a party to the action.

[10]*In re Marriage of Short,* 125 Wn.2d 865, 871, 890 P.2d 12 (1995); *Aetna Life Ins. Co. v. Bunt,* 110 Wn.2d 368, 372, 754 P.2d 993 (1988); *Togliatti v. Robertson,* 29 Wn.2d 844, 852, 190 P.2d 575 (1948); *Aetna Life Ins. Co. v. Boober,* 56 Wn. App. 567, 570, 784 P.2d 186 (1990); *Oil Heat Co. of Port Angeles, Inc. v. Sweeney,* 26 Wn. App. 351, 354, 613 P.2d 169 (1980); Harry M. Cross, *The Community Property Law (Revised 1985),* 61 Wash. L. Rev. 13, 33-34 (1986).

[11]*Short,* 125 Wn.2d at 871.

[12]*Nuss v. Nuss,* 65 Wn. App. 334, 344, 828 P.2d 627 (1992) (quoting *Oil Heat Co.,* 26 Wn. App at 354); *Boober,* 56 Wn. App. at 571.

that Dr. Boisen and Ms. Boisen permanently separated in July 1987 and thereafter lived separate and apart. The trial court's second essential proposition of fact, expressed in Findings of Fact 6 through 8 and Conclusion of Law 4 (part of which is a mislabeled finding of fact), was that Dr. Boisen paid the children's college expenses, beginning in August 1987, with money earned from his Alaska job (i.e., with money earned while he and Ms. Boisen were living separate and apart). Based on RCW 26.16.140 and these findings, the trial court concluded that Dr. Boisen had paid the children's college expenses with his separate property; that Ms. Boisen had not contributed; and that Ms. Boisen was not entitled to recover from Mr. Burgess on a reimbursement theory.

The question before us is whether we should overturn the trial court's findings. The answer is no, for at least two reasons.

■ First, Ms. Boisen does not assign error to Findings of Fact 5 through 8, or to the factual portion of Conclusion of Law 3. Thus, each is a verity on appeal.[13]

■ Second, and more importantly, the trial court's findings are supported by substantial evidence,[14] i.e., by evidence which, when viewed in the light most favorable to the party prevailing below, is sufficient to persuade a fair-minded, rational person that the declared premise is true.[15] With respect to separation, Dr. Boisen testified that he moved to Anchorage on July 1, 1987, and that Ms. Boisen

---

[13]*State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

[14]*See Schweitzer v. Schweitzer*, 132 Wn.2d 318, 937 P.2d 1062, 1067 (1997) ("Appellate review of a trial court's findings of fact is generally limited to determining whether substantial evidence supports the findings"); *Ino Ino, Inc. v. City of Bellevue*, 132 Wn.2d 103, 112, 937 P.2d 154 (1997) ("appellate court must affirm a trial court's findings of fact if they are based on live testimony and supported by substantial evidence"); *Organization to Preserve Agric. Lands v. Adams County*, 128 Wn.2d 869, 882, 913 P.2d 793 (1996) ("review is limited to determining whether substantial evidence supports the findings and, if so, whether the findings in turn support the trial court's conclusions of law").

[15]*Ino Ino*, 132 Wn.2d at 12; *World Wide Video, Inc. v. City of Tukwila*, 117 Wn.2d 382, 387, 816 P.2d 18 (1991).

remained in Tacoma with the children. Although he visited infrequently after that, they never sought marital counseling or made other attempts at reconciliation. Upon arriving in Alaska, he immediately set up his own residence and his own bank account; which he maintained continuously until divorce. With respect to the source of funds, Dr. Boisen testified that he paid the children's college expenses with money from his Alaska bank account, and that the contents of that account were his Alaska earnings. During the same time frame, Ms. Boisen's only income was from rental property that she owned and managed, and both she and Dr. Boisen testified that no rental income went toward college expenses. A rational trier of fact viewing this evidence in the light most favorable to Mr. Burgess could find, by a preponderance of evidence, that the Boisens permanently separated on July 1, 1987; that they lived separate and apart after that, within the meaning of RCW 26.16.140; and that Dr. Boisen paid the children's college expenses using money he earned while he and Ms. Boisen were living separate and apart. It follows that Dr. Boisen paid out of his separate property; that Ms. Boisen did not contribute; and that Ms. Boisen is not entitled to recover on a reimbursement theory.

## II.

Ms. Boisen's alternative theory is that even if Dr. Boisen paid the $211,796 out of his separate property, so that he is a third-party payer in relationship to her and Mr. Burgess, she is nevertheless entitled to recover because (1) Mr. Burgess owes $105,898 under the 1974 separation agreement and (2) the trial court erred by crediting him with one-half of the amount paid by Dr. Boisen. As she puts it in her brief,

> The primary question here involved is whether a parent is relieved of support arising out of [a] [d]issolution [d]ecree incorporating a settlement agreement . . . when a third party

provides assistance in support for college education. The obvious answer . . . should be no. [16]

Mr. Burgess' obligation to pay college expenses was established and defined when he and Ms. Boisen executed the 1974 separation agreement. As noted already, that agreement provides that he "will pay one-half of the board, room, tuition, and books and other necessary expenses for a four-year college education of each child."[17] Mr. Burgess construes this to mean that he was required to pay one-half of the children's college expenses, less payments made by third parties. In contrast, Ms. Boisen construes it to mean that Mr. Burgess was required to pay one-half of the children's college expenses, without credit or deduction for payments made by third parties.

■ ■ When the parties to a separation agreement dispute its meaning, the court must ascertain and effectuate their intent at the time they formed the agreement.[18] Generally, this is true even when the separation agreement has been incorporated in a dissolution decree, because the parties' intent will be the court's intent.[19] The intent of the parties is determined by examining their objective manifestations, including both the written agreement and the context within which it was executed.[20] If the agreement has only one reasonable meaning when viewed in context, that meaning necessarily reflects the parties' intent. If the agreement has two or more reason-

[16]Brief of Appellant at 7-8.

[17]Clerk's Papers at 30.

[18]*In re Marriage of Sievers*, 78 Wn. App. 287, 302, 897 P.2d 388 (1995); *see also Berg v. Hudesman*, 115 Wn.2d 657, 663, 801 P.2d 222 (1990).

[19]*See In re Marriage of Mudgett*, 41 Wn. App. 337, 341-42, 704 P.2d 169 (1985); *cf. Byrne v. Ackerlund*, 108 Wn.2d 445, 453-54, 739 P.2d 1138 (1987); *Yearout v. Yearout*, 41 Wn. App. 897, 900-01, 707 P.2d 1367 (1985); *In re Marriage of Olsen*, 24 Wn. App. 292, 297-98, 600 P.2d 690 (1979).

[20]*Lynott v. National Union Fire Ins. Co.*, 123 Wn.2d 678, 684, 871 P.2d 146 (1994); *Olson v. Trippel*, 77 Wn. App. 545, 553, 893 P.2d 634, *review denied*, 127 Wn.2d 1013 (1995); *DeBenedictis v. Hagen*, 77 Wn. App. 284, 290, 890 P.2d 529 (1995).

able meanings when viewed in context, the court must identify and adopt that which reflects the parties' intent. In the latter situation, a question of fact is presented, and an appellate court reviews the trial court's determination only for substantial evidence.[21]

When Mr. Burgess and Ms. Boisen executed the separation agreement at issue here, they clearly intended that Mr. Burgess would pay one-half the children's college expenses, and that someone else would pay the other half. A necessary corollary was that third-party payments covering *all* (100 percent) of the children's college expenses would be credited one half to Mr. Burgess, and one half to whoever was obligated to pay the remainder of the college expenses. The trial court so held when it ruled (1) that Mr. Burgess owed one-half of the children's college expenses ($105,898) pursuant to the 1974 separation agreement; that he was entitled to a credit equal to one half of Dr. Boisen's third party contributions ($105,898); and thus that Mr. Burgess had satisfied his obligation to pay college expenses. We conclude that the trial court did not err.

Affirmed.

SEINFELD, J., concurs.

HUNT, J. (dissenting) — I dissent. Their 1975 decree of dissolution expressly required the father, Respondent Malcolm Burgess, to pay to the mother, Appellant Sheryl Page (Burgess) Boisen, as "additional support" for the children's education, *"one-half of the board, room, tuition, and books and other necessary expenses for a four-year college education of each child."* (Emphasis added.) At issue on appeal is the mother's right to enforce this provision where the father paid none of the children's college expense, which were then funded by their stepfather.

Ms. Boisen has assigned error to the following findings

---

[21]*See Schweitzer*, 937 P.2d at 1067; *Ino Ino*, 132 Wn.2d at 112; *Organization to Preserve Agric.*, 128 Wn.2d at 882.

and conclusions of the trial court: (a) that Mr. Burgess "has satisfied all child support requirements" (conclusion of law 2); (b) that Dr. Boisen "gratuitously" paid the children's college expenses (conclusion of law 4); and (c) that Ms. Boisen paid none of the children's college expense (conclusion of law 5). These findings and conclusions are not supported by the record. Conclusion of law 2 is contrary to the fact that Mr. Burgess paid none of his children's college expenses and therefore has not satisfied that portion of his child support requirements. Conclusion of law 4 ignores the uncontroverted evidence of Dr. Boisen's expectation of reimbursement by Mr. Burgess. Conclusion of law 5 is contrary to evidence that Ms. Boisen paid some of the children's college expenses.

Where subject to interpretation, "the construction of [a dissolution] decree and any contract incorporated therein is a question of law." *Byrne v. Ackerlund,* 108 Wn.2d 445, 455, 739 P.2d 1138 (1987) (citing *In re Marriage of Gimlett,* 95 Wn.2d 699, 704-05, 629 P.2d 450 (1981)). A reviewing court, charged with the task of ascertaining the intended effect of a divorce decree, is limited to examining the provisions of the decree. *Puckett v. Puckett,* 41 Wn. App. 78, 82, 702 P.2d 477 (1985). If the decree is unambiguous, it is not open to construction. The decree can be considered ambiguous only if its terms are uncertain or susceptible to more than one meaning. *Harding v. Warren,* 30 Wn. App. 848, 850, 639 P.2d 750 (1982).

Here the decree unambiguously required Mr. Burgess to pay half of his children's college expenses. His obligation was not qualified in any way. Nor did he seek modification of this child support provision.[22]

"Interpretation by the reviewing court must be based upon the intent of the parties as reflected in the language of the agreement." *Byrne,* 108 Wn.2d at 455 (citing *Kinne v. Kinne,* 82 Wn.2d 360, 362, 510 P.2d 814 (1973)). "Courts can neither disregard contract language which the parties

---

[22]Specifically Mr. Burgess did not seek modification to allow satisfaction of his obligation with his offer to co-sign educational loans.

have employed nor revise the contract under a theory of construing it." *Wagner v. Wagner*, 95 Wn.2d 94, 101, 621 P.2d 1279 (1980). Yet here, "under a theory of construing it," the majority disregards and revises the plain language of the parties' 1974 separation agreement, incorporated into the decree. *Wagner*, 95 Wn.2d at 101.

The majority acknowledges that when Mr. Burgess and Ms. Boisen entered the separation agreement, "they clearly intended that Mr. Burgess would pay one-half the children's college expenses." Majority opinion, at 921. Although the decree is silent as to the source of the other half,[23] the majority assumes, "[a] necessary corollary was that third-party payments covering *all* (100 percent) of the children's college expenses would be credited one half to Mr. Burgess, and one half to whoever was obligated to pay the remainder of the college expenses." Majority opinion, at 921. The record does not support this assumption. Regardless of who was intended to pay or who actually paid the other half, Mr. Burgess' obligation to pay one-half remains unaltered.

When it became clear that Mr. Burgess was not going to pay,[24] the mother's second husband, Dr. Elliot Boisen, advanced the children's college expenses so that they could pursue their educations without interruption. Following their separation and December 1991 dissolution, Dr. Boisen and Ms. Boisen agreed that Dr. Boisen would continue to pay the children's college expenses.[25] Dr. Boisen was "aware of the agreement and promise by Malcolm Burgess to help out on their college expenses, and [he] was expect-

[23]The parties may have expected the other half to come from the children's own earnings, gifts from relatives or friends, loans, scholarships, or any number of possibilities other than Ms. Boisen alone.

[24]Mr. Burgess' refusal to pay college expenses followed a period during which he was also in arrears on precollege child support payments.

[25]The Boisens' dissolution decree did not require Dr. Boisen to pay the children's college expenses, nor did it specify to whom Mr. Burgess' reimbursement would be made because they were not sure whether Malcolm Burgess would repay his share of the college expenses.

ing ultimately to get reimbursed for that." These expenses totaled about $211,796.

When his deposition was taken in 1995, Dr. Boisen was no longer expecting to be personally reimbursed by Malcolm Burgess, but rather designated

> that [the reimbursement] should be going to Page, . . . since a lot of it came as part of —
>
> . . . .
>
> Part of community property. These moneys were spent from community funds of the parties until dissolution in December of '91, and then by me. Since that time I have considered it the right of Page to receive the money paid by Malcolm as his share of the college expenses.

The majority deems significant their separate property characterization of Dr. Boisen's postseparation payments. But it is irrelevant whether the moneys paid by Dr. Boisen came from the Boisens' marital community or Dr. Boisen's separate property. Dr. Boisen was not an anonymous, third-party benefactor, but rather had been Ms. Boisen's husband and the children's stepfather,[26] who generously enabled the children to pursue their educations rather than await contributions from their intransigent father.

The majority's characterization of Dr. Boisen's payments as "gifts to the children" neither extinguishes the children's college expenses nor absolves Malcolm Burgess of his obligation to pay one-half, for which no exclusions were enumerated for gifts, scholarships, loans, or moneys earned by the children. Majority opinion, p. 916-17 n.9. I agree with the majority that Dr. Boisen clearly intended to benefit the children. But he also intended to gift Ms. Boisen, not Mr. Burgess, from whom he expected reimbursement.

The courts should neither reward nor invite parents to

---

[26]Even if arguably required by former RCW 26.16.205 (1969) to support his stepchildren during the marriage, Dr. Boisen's voluntary payment of the children's college expenses in no way absolved Malcolm Burgess of his obligation to pay half.

avoid court-ordered child support obligations, especially here, where the payer parent's intransigence created a major breach, remedied, not by the father, but by the children's kind stepfather.

There is no language in the decree, there are no facts, and there is no law justifying the trial court's utilization of Dr. Boisen's voluntary payments on the children's behalf to extinguish Mr. Burgess' court-ordered obligation to provide for his children's education. Judicial alchemy should not be used to transform Mr. Burgess' nonpayment into a "satisfied" obligation.

I would vacate conclusion of law 2, that Mr. Burgess "has satisfied all child support requirements," reverse, and remand to the trial court to require Mr. Burgess to pay Ms. Boisen half of the children's college-related expenses, consistent with the express language of the decree.

Review denied at 134 Wn.2d 1014 (1998).