# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| KORBY KENCAYD,<br>RANDLE KENCAYD, | ) ) ) | No. 74665-1-I |
| Respondent, | ) ) | |
| v. | ) ) | |
| BRYEN VON PRIECE, | ) ) | UNPUBLISHED OPINION |
| Appellant. | ) ) ) | FILED: November 28, 2016 |

VERELLEN, C.J. — Bryen Von Priece appeals a stalking protection order in favor of his neighbors Randle and Korby Kencayd. Von Priece contends the record does not contain sufficient evidence to support the protection order. He also contends the trial court erred in not considering his offer of proof and deprived him of his due process right to cross-examine the Kencayds. We conclude sufficient evidence supports the protection order. Because the trial court did not abuse its discretion regarding the offer of proof and Von Priece fails to establish any denial of due process, we affirm.

## FACTS

This appeal is the latest chapter in an ongoing dispute between Bryen Von Priece and his neighbors Randle and Korby Kencayd. Von Priece and the Kencayds first met in the summer of 2013 when the Kencayds' unleashed dog confronted Von Priece's leashed dog in front of the Kencayds' property, triggering an argument

between the neighbors. Since then, Von Priece has continuously walked his dog in front of the Kencayds' property "waiting for an interaction . . . pretty much daily."[1]

The Kencayds reside in and operate a bed and breakfast on their property. Von Priece trains show dogs and works from his home. He wears a small video camera attached to his hat to record his dogs on their walks.

On October 12, 2015, Von Priece got into a verbal altercation with Randle[2] while walking his dog in front of the Kencayds' property. Von Priece's video camera recorded the interaction. Less than two months later, on December 3, 2015, Von Priece again encountered Randle while walking his dog near the Kencayds' property. This encounter resulted in another verbal altercation and was recorded on Von Priece's video camera.

Von Priece petitioned for an antiharassment protection order against the Kencayds. During that hearing, Von Priece played his video recordings of their October 12, 2015 and December 3, 2015 interactions. The trial court denied Von Priece's motion.

Two weeks after Von Priece filed his petition, the Kencayds petitioned for a stalking protection order against Von Priece. The Kencayds' petition alleged that Von Priece walks past their property daily "as if . . . anticipating another interaction."[3]

---

[1] Report of Proceedings (RP) (Jan. 5, 2016) at 5-6.

[2] For clarity, we refer to the Kencayds by their first names.

[3] Clerk's Papers (CP) at 3.

2

Their petition further alleged that Von Priece "left a vile message" on the Kencayds' business phone and "posted a false Yelp review" on their business website.[4]

At a hearing on January 5, 2016, Von Priece disputed the Kencayds' accounts of their interactions and sought to introduce his video recordings from October 12, 2015 and December 3, 2015. The trial court denied Von Priece's request. The court explained the recordings were not in the proper format to be filed with the court and, after repeatedly asking Von Priece to explain how the recordings would contradict any evidence offered by the Kencayds, concluded that it "did not feel [the recordings] would make a difference" in its ruling based upon Von Priece's offer of proof.[5] The court granted the Kencayds' motion.

Von Priece appeals.

## ANALYSIS

### STALKING PROTECTION ORDER

Von Priece contends there is insufficient evidence to support a finding that he "committed 'stalking conduct' against both Kencayds, but especially Korby Kencayd."[6] We disagree.

We review the trial court's decision to grant or deny a protection order for an abuse of discretion.[7] Where a court holds a hearing and weighs contradictory evidence before the entry of a protection order, the proper standard of review is

---

[4] Id.

[5] RP (Jan. 5, 2016) at 36.

[6] Appellant's Br. at 14.

[7] In re Marriage of Freeman, 169 Wn.2d 664, 670-71, 239 P.3d 557 (2010).

substantial evidence.[8] Substantial evidence is evidence which, "when viewed in the light most favorable to the party prevailing below, is sufficient to persuade a fair-minded, rational person that the declared premise is true."[9]

A superior court may enter a stalking protection order if it finds by a preponderance of the evidence that the petitioner has been a victim of stalking conduct by the respondent.[10] The term "stalking conduct" means any of the following:

(a) Any act of stalking as defined under RCW 9A.46.110;

(b) Any act of cyberstalking as defined under RCW 9.61.260;

(c) Any course of conduct involving repeated or continuing contacts, attempts to contact, monitoring, tracking, keeping under observation, or following of another that:

  (i)   Would cause a reasonable person to feel intimidated, frightened, or threatened and that actually causes such a feeling;

  (ii)  Serves no lawful purpose; and

  (iii) The stalker knows or reasonably should know threatens, frightens, or intimidates the person, even if the stalker did not intend to intimidate, frighten, or threaten the person.[11]

The crime of stalking under RCW 9A.46.110(1) is committed when, without lawful authority, a person intentionally and repeatedly harasses or follows another person, places that person in reasonable fear of injury, and either (a) intends to frighten,

---

[8] In re Marriage of Rideout, 150 Wn.2d 337, 351, 77 P.3d 1174 (2003).

[9] Boisen v. Burgess, 87 Wn. App. 912, 918, 943 P.2d 682 (1997); In re Welfare of T.B., 150 Wn. App. 599, 607, 209 P.3d 497 (2009).

[10] RCW 7.92.100(1)(a).

[11] RCW 7.92.020(3).

intimidate, or harass the person or (b) knows or reasonably should know that the person is afraid, intimidated, or harassed.

When viewed in the light most favorable to the Kencayds, there is substantial evidence supporting the protection order based upon stalking. Here, both Randle and Korby testified to their interactions with Von Priece and jointly testified to Von Priece walking "back and forth across our house waiting for an interaction . . . pretty much daily."[12] The trial court noted both the Yelp review and a sworn declaration of another neighbor corroborating similar allegations of Von Priece's conduct. This is evidence of repeated conduct that Von Priece reasonably should have known would cause concern of stalking.[13]

Von Priece appears to rely on the premise that the Kencayds admitted in the prior antiharassment hearing that they only had two limited "interactions" with him and that those unedited interactions were on his video recordings.[14] But the Kencayds' testimony on January 5, 2016 supports "stalking" incidents other than the two actual face-to-face interactions that were allegedly contained on Von Priece's video recordings.

OFFER OF PROOF

Von Priece next contends the trial court erred in not considering his offer of proof as to the contents of his video recordings. We disagree.

---

[12] RP (Jan. 5, 2016) at 4-8. Randle described Von Priece's frequent presence and Korby confirmed that Von Priece's presence stopped in October of 2015.

[13] See RCW 7.92.020(3)(c)(iii); RCW 9A.46.110(1)(b), (c)(ii).

[14] Appellant Br. at 15-16 ("In the hearing on Von Priece's anti-harassment petition on December 28, 2015, Korby Kencayd testified that he only had two interactions with Von Priece.").

A "protection order proceeding is intended to be a rapid and efficient process."[15] Consistent with ER 1101(c)(4), the rules of evidence "need not be applied," and the trial court retains broad discretion in ruling on evidentiary matters.[16]

An offer of proof performs three functions: "it informs the court of the legal theory under which the offered evidence is admissible; it informs the judge of the specific nature of the offered evidence so that the court can assess its admissibility; and it creates a record adequate for review."[17]

Here, the trial court repeatedly asked Von Priece to explain how the content of the video recordings would contradict any evidence offered by the Kencayds. Von Priece referenced the Yelp review and allegations that he once contacted the police, but those incidents had nothing to do with the recordings. Von Priece maintains that the two recorded incidents were the only "interactions" between him and the Kencayds. But the almost daily incidents of Von Priece staring and waiting for the Kencayds to come out of their house are not part of the recordings. And Von Priece could not explain to the trial judge how the recordings would contradict or meaningfully address the Kencayds' versions of the two recorded incidents.

The court noted that Randle admitted he went "on a tirade" and repeatedly insulted Von Priece during their October 2015 interaction, so that recording would not have contradicted the Kencayds' evidence.[18] As to the December 2015 incident, Von

---

[15] In re Marriage of Stewart, 133 Wn. App. 545, 552, 137 P.3d 25 (2006).

[16] See generally Blackmon v. Blackmon, 155 Wn. App. 715, 230 P.3d 233 (2010).

[17] Thor v. McDearmid, 63 Wn. App. 193, 204, 817 P.2d 1380 (1991).

[18] RP (Jan. 5, 2016) at 20.

Priece argued the recording showed that he just walked past Randle jogging down the street and proves that he was not stalking Randle. While the recording would arguably reveal who initiated that interaction and the tone of the interaction, the judge said he was not relying on what was described to be on the recordings, which suggests the court did not rely on that incident as the basis for finding stalking.

As to the Kencayds' allegation that Von Priece threatened them with a gun,[19] that allegation was completely undercut by the Kencayds' admission that they relied entirely on Von Priece's statement in his antiharassment petition that he has a concealed weapons permit.[20] The court expressly concluded weapons were not involved in the interactions.[21] Von Priece does not establish that the trial court relied upon speculative assertions regarding guns. On this basis, the recordings would not make any difference.

Because the trial court allowed all parties to explain their side, made extensive efforts to allow Von Priece to explain how his recordings were not merely cumulative,

[19] In their petition, the Kencayds alleged that during the October 12, 2015 interaction. Von Priece stated, "[Y]ou know I have a gun and will defend myself." CP at 3. The record does not reveal that the trial court based its ruling on this bare allegation.

[20] RP (Jan. 5, 2016) at 9-10, 34. According to the Kencayds, Von Priece made the following statement in his antiharassment petition: "Respondent ran towards me on a public street today without changing course or lowing his pace when eye contact was made. . . . This is disturbing enough for me to use my license to conceal and carry for a simple dog walk." CP at 4. At the hearing on the Kencayds' petition, the Kencayds asked Von Priece whether he had ever threatened to shoot or kill them and Von Priece responded, "No." RP (Jan. 5, 2016) at 9.

[21] See RP (Jan. 5, 2016) at 34-35 (the court ultimately stated, "But weapons have not been part of your interaction" and Randle confirmed that weapons were not involved).

7

and did not rely upon speculative allegations, we conclude there was no abuse of discretion.[22]

## CROSS-EXAMINATION

Von Priece also contends he was deprived of his due process right to cross-examine the Kencayds. But Von Priece fails to cite any authority supporting a constitutional due process argument.

Further, decisions regarding the scope of cross-examination are normally evidentiary rulings left to the sound discretion of the trial court.[23] A trial court abuses its discretion when its decision is unreasonable or based on untenable grounds.[24]

Here, the trial court reasonably conducted the hearing by allowing the moving parties, the Kencayds, to tell the court the basis for their request and to ask their five questions of Von Priece. The court then gave Von Priece an opportunity to respond to the Kencayds' allegations. It was not until after the court announced its ruling to issue the protection order that Von Priece requested to cross-examine the Kencayds. The court allowed Von Priece to ask the Kencayds one question.

Ultimately, the court concluded there was a basis for stalking and told Von Priece, "All I want you to do is leave these guys alone."[25] The court was manifestly

---

[22] Playing the video recordings was also not necessary because the recordings were not in the proper format to make them part of the court record. While the court could have allowed the recordings or a transcript of the recordings on posthearing motions, we conclude it was not an abuse of discretion to not do so.

[23] Falk v. Keene Corp., 53 Wn. App. 238, 247, 767 P.2d 576 (1989).

[24] Id.

[25] RP (Jan. 5, 2016) at 25.

patient with the neighbors' squabbling and run-on attacks. This was a proper exercise of discretion in this rapid and efficient process.

We affirm.

WE CONCUR: