[No. 30181. Department One. July 17, 1947.]

*In the Matter of the Estate of* LOUIS W. BROWN, *Deceased.*

EDWARD O. BROWN, *Appellant,* v. FLORENCE TURNER, *Individually and as Administratrix, Respondent.*[1]

[1]Reported in 183 P. (2d) 768.

*Futter, Merrick & Merrick,* for appellant.

*Moulton & Powell* and *Thomas B. Gess,* for respondent.

MILLARD, J.—When Florence Turner married Louis W. Brown, in 1943, both were elderly people. He was in comfortable circumstances, with a small farm, stocks, bonds, and cash, while she had no separate property. No community property was accumulated.

Early in 1946, the husband brought an action for a divorce. January 31, 1946, Mr. and Mrs. Brown, both being represented by attorneys, entered into a written property settlement which recited that the parties had separated and were living apart, but that they desired to remain as friendly as possible and believed that they could make an equitable and just property agreement which would properly provide for both parties, since they had not been able to make a success of their marriage. The agreement, so far as material, reads as follows:

"That the first party herein, in the event that a decree of divorce is granted, will present to the Court for its approval the following agreement:

"(1) First party shall receive all of his personal effects and belongings, including a 1931 Ford Automobile, a bed and radio, and all cash, securities, or other property now in his possession, provided, however, that first party agrees to pay second party $46.00 cash to cover the cost of second party having her name legally changed.

"(2) Second party shall receive all property now in her possession, including all cash, securities, and bonds.

"(3) It is hereby agreed that first party owns the following described real estate situated in County of Benton and State of Washington, to-wit: [description not essential] the same having been acquired by the first party during his previous marriage.

"It is further agreed that the first party will arrange to sell the above described property upon contract or for cash, and will recognize that second party should be allowed some consideration so as to adequately care for second party for the remainder of her lifetime. It is

hereby agreed that first party shall give second party a warranty deed to three-sevenths undivided interest in the above described real property, and first party shall sell the remaining four-sevenths interest to John A. Rothfuss and wife on contract for $4000.00.

"(4) In the event of the granting of a divorce in the above entitled action, this property settlement shall be a full and complete settlement of all of the property rights of the parties hereto, and the property received by the first party hereunder shall thereupon become and/or remain in his separate property, free and clear of all claims whatsoever on the part of the second party, and the property received by the party of the second part shall thereupon become her separate property, free and clear of any claims whatsoever on the part of the first party. It is hereby agreed by the parties hereto that this property settlement shall be final and conclusive between the parties hereto, regardless of whether or not either party hereto may die before the Interlocutory Decree of Divorce shall become final. It is further agreed between the parties hereto, that no claim whatsoever shall be made by second party, from first party, for any alimony whatsoever. The party of the first part herein shall pay the costs of the divorce action, including his attorney's fees.

"It is further understood and agreed by and between the parties hereto that from this date forward all income received by either party hereto shall be construed to be separate property of the party receiving the same, free and clear of any claim whatsoever, of the other party. Each of the parties hereto hereby agree that they will execute the necessary instruments of transfer in order to put this property agreement into effect when requested so to do by the other party or his or her attorney.

"This agreement shall be binding on each of the parties hereto, their heirs and assigns forever."

On February 1, 1946, the day after the property settlement was signed, both parties sold their separate interest in the real estate to John A. Rothfuss and wife. Louis Brown signed a real estate contract and statutory real estate warranty deed, and Florence Brown signed a quitclaim deed. The instruments were placed of record February 14, 1946. On February 28, 1946, the interlocutory decree of divorce was entered, and it confirmed the terms of the property settlement. This was one month subsequent

to the execution of the property agreement, which had been carried into effect and the real estate conveyed to third parties.

Prior to the expiration of the six-month interlocutory period, Louis W. Brown died, leaving a will in which his wife was not mentioned and Edward O. Brown, a nephew, was named as residuary heir. Edward O. Brown declined to serve as executor, whereupon Florence Brown, whose name now is Florence Turner, was named administratrix with the will annexed for the estate. On October 10, 1946, she filed her application as the surviving spouse of deceased for award of property in lieu of homestead. Over objections of Edward O. Brown, the court entered an order awarding to Florence Turner, as surviving spouse of Louis W. Brown, deceased, certain items of personal property of the aggregate value of four thousand dollars from that estate in lieu of homestead. Edward O. Brown appealed.

■ It is conceded by appellant that the interlocutory order of divorce became a nullity for all purposes on the death of Louis W. Brown, which occurred prior to the entry of the final decree. *In re Garrity's Estate,* 22 Wn. (2d) 391, 156 P. (2d) 217. Nor does appellant rely on the confirmation of the property settlement by the interlocutory decree, which he concedes became a nullity for all purposes.

Counsel for appellant make no argument that Rem. Supp. 1945, § 1473 [P.P.C. § 205-1] is not a charitable and remedial statute founded on public policy and favored by the law, or that it is not usually granted where an interlocutory decree becomes a nullity by reason of the death of one of the parties, even where there has been a property settlement. It is appellant's position that the probate homestead right may be waived, and that, by the agreement quoted above, the parties obviously intended to waive any rights which might accrue to either upon death of the other.

■ That the right of homestead may be waived or relinquished, needs no citation of sustaining authority. In deciding the case at bar, it is necessary to ascertain the intention of the parties at the time they entered into the

property settlement agreement. If it was their intention to make a settlement which would be effective regardless of whether either party to the agreement died before the entry of a final decree of divorce, then the property secured by each became and remained separate property, free and clear of all claims—including right of homestead—on the part of the other party.

We stated in *In re Garrity's Estate, supra*, that, in ascertaining the intention of the parties to a written agreement, we should look at the wording of the instrument itself as made by the parties, view it as a whole, and consider all of the circumstances surrounding the transaction, including the subject matter, together with the subsequent acts of the parties to the instrument.

Applying the well-established rule, it is clear from the facts recited above that the parties to the property agreement had in contemplation the possibility of death and obviously they meant to waive any rights which might accrue upon death, one of which rights would be the homestead right. The contract recites that the property settlement shall be final and conclusive between the parties, regardless of whether either party died prior to the time the interlocutory decree of divorce became final. In the light of that recitation, in conjunction with the agreement of the parties that the property divided and made separate property by the instrument shall be free and clear of all claims whatsoever on the part of the other party, and that "this agreement shall be binding on each of the parties hereto, his heirs and assigns forever," it is clear the parties meant to make sure that the division of the property should stand and that each should dispose of that separate property as if either were unmarried. This conclusion is inescapable under the language that the agreement was to be binding on each of the parties, their heirs and assigns forever.

To this conclusion, additional force is given by the actions of the parties immediately after the agreement was executed. Both parties sold their separate interest in the real

estate to a third party. They executed and delivered real estate contract and deed, which were placed of record. The language of the agreement and the actions of the parties to that agreement reflect the intent of the parties to waive each and every right—including the right of homestead—one could exercise as to the property of the other if the division of the property was to be affected by the death of either party before the interlocutory decree of divorce became final. The parties explicitly agreed that the property settlement was final and conclusive between them, regardless of whether either party died before the interlocutory decree of divorce became final, and that the agreement was to be binding on each of the parties to the agreement, their heirs and assigns forever.

The judgment is reversed.

MALLERY, C. J., ROBINSON, SIMPSON, and ABEL, JJ., concur.