IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Estate of: | ) |
| | ) |
| MICHAEL A. PETELLE, | ) No. 77556-1-I |
| | ) |
| Deceased. | ) DIVISION ONE |
| | ) |
| GLORIA PETELLE, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) PUBLISHED OPINION |
| | ) |
| MICHELLE ERSFELD PETELLE, | ) FILED: May 6, 2019 |
| | ) |
| Respondent. | ) |

SMITH, J. — After a six-year marriage, Michael Petelle filed a petition to dissolve his marriage to Michelle Ersfeld Petelle.[1] The parties executed a Separation Contract and CR2A Agreement (Separation Contract) that divided their assets into separate property and was a "final settlement of all their marital and property rights and obligations." Michael died intestate with no children before a dissolution decree was entered. Gloria Petelle, Michael's mother and heir, appeals the trial court's denial of her motion to terminate Michelle's right to intestate succession. We hold that the right to intestate succession is a marital

---

[1] Because all the parties have the same last name, we refer to each person by his or her first name.

right that, although derived from statute, arises because of a person's marital status. By agreeing to a final settlement of all marital rights, Michelle waived that right by signing the Separation Contract. Therefore, we reverse and remand with instructions for the trial court to grant Gloria's motion to terminate Michelle's right to intestate succession. We also deny Michelle's request for attorney fees on appeal and at the trial court.

## FACTS

Michael and Michelle married on May 20, 2011. On January 27, 2017, Michael filed a petition for dissolution of their marriage. On February 14, 2017, Michael and Michelle executed the Separation Contract that divided their property and debts. Michael died on May 1, 2017, before a final decree of dissolution was entered. He did not have a will, and he had no children.

Michelle submitted a petition for letters of administration, appointment of an administrator, an order of solvency, and nonintervention powers on May 10, 2017. Her petition did not disclose the existence of the dissolution action or the Separation Contract. Furthermore, she did not give notice to any of Michael's heirs of her intent to petition for nonintervention powers, as required by RCW 11.68.041. Gloria contested Michelle's nonintervention powers. The trial court revoked Michelle's nonintervention powers and required her to post a $100,000 bond but allowed Michelle to continue as Michael's personal representative. It also awarded attorney fees to Gloria.

Gloria then petitioned the court on September 27, 2017, for an order terminating Michelle's right to intestate succession. The trial court denied

Gloria's motion but reserved ruling on Michelle's motion for attorney fees. Gloria appeals.

## RIGHT TO INHERIT AS A "SURVIVING SPOUSE"

Gloria argues that Michelle and Michael's marriage was defunct and, therefore, Michelle is not entitled to inherit as a "surviving spouse" because her marriage to Michael was "terminated" under RCW 11.02.005(17). We disagree.

The meaning of a statute is a question of law that we review de novo. Durant v. State Farm Mut. Auto. Ins. Co., 191 Wn.2d 1, 8, 419 P.3d 400 (2018). Our fundamental objective in determining what a statute means is to ascertain and carry out the legislature's intent. Durant, 191 Wn.2d at 8. "If the statute's meaning is plain on its face, then courts must give effect to its plain meaning as an expression of what the legislature intended." Durant, 191 Wn.2d at 8. The court may use a dictionary to discern the plain meaning of an undefined statutory term. Nissen v. Pierce County, 183 Wn.2d 863, 881, 357 P.3d 45 (2015). If, after consulting a dictionary, the statute is susceptible to more than one reasonable meaning, the statute is ambiguous and it is appropriate to use other statutory construction aids and examine the legislative history. Wrigley v. State, 5 Wn. App. 2d 909, 924-25, 428 P.3d 1279 (2018). "The court has frequently looked to final bill reports as part of an inquiry into legislative history." State v. Bash, 130 Wn.2d 594, 601, 925 P.2d 978 (1996).

RCW 11.04.015(1)(c) states that a "surviving spouse" shall receive "[t]here-quarters of the net separate estate if there is no surviving issue, but the

intestate is survived by one or more of his or her parents." RCW 11.02.005(17) describes when an individual does *not* qualify as a "surviving spouse":

> "Surviving spouse" or "surviving domestic partner" does not include an individual whose marriage to or state registered domestic partnership with the decedent has been *terminated, dissolved, or invalidated* . . . . A decree of separation that does not terminate the status of spouses or domestic partners is not a dissolution or invalidation for purposes of this subsection.

(Emphasis added.) "Terminated" is not defined in the statute, but the dictionary defines "terminate" as "to bring to an ending or cessation in time, sequence, or continuity : CLOSE . . . to form the ending or conclusion of . . . to end formally and definitely (as a pact, agreement, contract)." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2359 (2002). Using this definition of "terminated," the term is susceptible to two or more meanings because it is not clear what action is required to "terminate" a marriage or domestic partnership. Therefore, it is necessary to consult the legislative history of the statute to ascertain the legislature's intent.

RCW 11.02.005(17) was revised in 2008 as part of a broader bill expanding domestic rights and responsibilities of all couples recognized as domestic partners under Washington's State Registered Domestic Partnerships Act, chapter 26.60 RCW. H.B. 3104, 60th Leg., Reg. Sess. (Wash. 2008). The statute's references to domestic partners and domestic partnerships and the word "terminated" were added as part of this revision. Based on the final bill report, "terminated" refers to a process for ending a domestic partnership with the Secretary of State. See FINAL B. REP. ON SECOND SUBSTITUTE H.B. 3104, 60th Leg., Reg. Sess. (Wash. 2008). Contrary to Gloria's contention, the legislature

4

did not add "terminated" to describe a marriage that is defunct. Because Michelle was not in a domestic partnership with Michael that was terminated by the Secretary of State, she is a surviving spouse under the statute and is entitled to inherit 75 percent of his separate property, absent a waiver of that right.

## WAIVER OF MARITAL RIGHT TO INTESTATE SUCCESSION

Gloria next argues that Michelle waived her right to inherit Michael's property as a "surviving spouse" by entering into the Separation Contract. We agree.

"When the parties to a separation agreement dispute its meaning, the court must ascertain and effectuate their intent at the time they formed the agreement." Boisen v. Burgess, 87 Wn. App. 912, 920, 943 P.2d 682 (1997). "The intent of the parties is determined by examining their objective manifestations, including both the written agreement and the context within which it was executed." Boisen, 87 Wn. App. at 920. "If the agreement has only one reasonable meaning when viewed in context, that meaning necessarily reflects the parties' intent." Boisen, 87 Wn. App. at 920. If the agreement has more than one reasonable meaning, a question of fact is presented and this court reviews the trial court's determination for substantial evidence. Boisen, 87 Wn. App. at 920-21. But where there is no reliance on extrinsic evidence, interpretation of a contract is a question of law we review de novo. State v. R.J. Reynolds Tobacco Co., 151 Wn. App. 775, 783, 211 P.3d 448 (2009). "[W]e attempt to determine the parties' intent by focusing on the objective manifestations of the agreement,

5

rather than on the unexpressed subjective intent of the parties." Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005).

"'[W]aiver is the intentional and voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right.'" In re Estate of Lindsay, 91 Wn. App. 944, 950, 957 P.2d 818 (1998) (alteration in original) (quoting Peste v. Peste, 1 Wn. App. 19, 24, 459 P.2d 70 (1969)). It can be an express agreement or be inferred from the circumstances. Lindsay, 91 Wn. App. at 950-51. Waiver is "'a voluntary act which implies a choice, by the party, to dispense with something of value or to forego [sic] some advantage.'" Lindsay, 91 Wn. App. at 951 (quoting Peste, 1 Wn. App. at 24).

Under Washington law, a surviving spouse has a right to inherit from his or her deceased spouse's estate. RCW 11.04.015(1). This statutory right to intestate succession turns on a person's marital status and is therefore a marital right. See 19 SCOTT J. HORENSTEIN, WASHINGTON PRACTICE: FAMILY & COMMUNITY PROPERTY LAW § 5:3, at 125 (2d ed. 2015) ("Marital rights . . . include . . . inheritance rights.").

Here, the Separation Contract states that "the parties hereby stipulate and agree to make a complete and final settlement of *all their marital and property rights* and obligations on the following terms and conditions." (Emphasis added.) This language is, arguably, sufficient to constitute waiver of all marital and property rights flowing from the marital relationship, including the right to intestate succession.

While Michelle concedes that a party can waive his or her right to intestate succession, she argues that such a waiver did not occur here. She contends that in order to constitute a waiver of her right to intestate succession, the Separation Contract must clearly state that she waived that specific right and that a general waiver of all marital rights is insufficient. Even assuming her argument has merit, we hold that additional language in the Separation Contract supports a holding that Michelle impliedly waived her right to intestate succession.

Washington courts have determined that a spouse's right to a homestead, another marital inheritance right, can be impliedly waived in a settlement agreement of marital and property rights in two previous cases: In re Estate of Brown, 28 Wn.2d 436, 439, 183 P.2d 768 (1947), and Lindsay. Following the analysis in both of these cases, Michelle impliedly waived her right to intestate succession by entering into the Separation Contract.

In Brown, the Supreme Court considered whether Florence Turner was entitled to an award of property in lieu of homestead from Louis Brown's estate. At the time of Brown's death, the parties were separated, their divorce was pending, and Brown had executed a new will that omitted Turner. Brown, 28 Wn.2d at 437, 439. The parties also entered into a settlement agreement that stated:

> "(4). In the event of the granting of a divorce in the above entitled action, this property settlement shall be a *full and complete settlement of all of the property rights of the parties hereto*, and the property received by the first party hereunder shall thereupon become and/or remain in his separate property, free and clear of all claims whatsoever on the part of the second party, and the property received by the party of the second part shall thereupon become her separate property, free and clear of any claims whatsoever on

the part of the first party. It is hereby agreed by the parties hereto that this property settlement shall be final and conclusive between the parties hereto, *regardless of whether or not either party hereto may die before the Interlocutory Decree of Divorce shall become final. . . .*

". . . .

"This agreement shall be binding on each of the parties hereto, their heirs and assigns forever."

Brown, 28 Wn.2d at 438 (emphasis added). The Supreme Court held that Turner waived all rights to a homestead by signing the agreement. Brown, 28 Wn.2d at 440. It determined that if the parties intended the settlement agreement to be effective even if one of them died, "then the property secured by each became and remained separate property, free and clear of *all* claims—including right of homestead—on the part of the other party." Brown, 28 Wn.2d at 440 (emphasis added). Considering the language of the agreement and the circumstances surrounding its execution, the court held that it was "clear" that Turner and Brown contemplated the possibility of death and "meant to waive *any* rights which might accrue upon death, one of which rights would be the homestead right." Brown, 28 Wn.2d at 440 (emphasis added). This was clear because the language of the agreement indicates that "the property settlement shall be final and conclusive between the parties, regardless of whether either party died prior to the time the interlocutory decree of divorce became final." Brown, 28 Wn.2d at 440. That, combined with the release of claims on the other's separate property, and the recitation that the agreement was binding on the parties, heirs, and assigns, clearly evidenced "that the division of the property should stand and that each should dispose of that separate property as if either were unmarried." Brown, 28 Wn.2d at 440.

Here, similar to the agreement in Brown, the Separation Contract also states that it is "a complete and final settlement of all [of Michelle and Michael's] marital and property rights and obligations." Furthermore, it is effective even upon the death of either party. Therefore, as in Brown, the Separation Contract evidences Michael and Michelle's intent that "the property secured by each became and remained separate property, free and clear of all claims . . . on the part of the other party," including any right to intestate succession. Brown, 28 Wn.2d at 440 (emphasis added).

More recently, in Lindsay, Division III of this court also concluded that a separation agreement constituted an implied waiver of a spouse's right to a homestead. In that case, Murray and Cathy Lindsay signed a separation agreement dividing their real and personal property on October 1, 1991, after an almost eight-year marriage. Lindsay, 91 Wn. App. at 947. Murray then executed a new will leaving nothing to Cathy. Lindsay, 91 Wn. App. at 947. He died unexpectedly three years later, and Cathy petitioned the court for an award in lieu of homestead. Lindsay, 91 Wn. App. at 947.

The Court of Appeals held that the intent of the separation agreement was undisputed. Lindsay, 91 Wn. App. at 951. The agreement stated that "'neither has a claim or interest in anything acquired after the date of October 1, 1991 or anytime in the future,'" and it required that if the parties later reconciled, any changes to the agreement had to be in a writing and signed by both parties. Lindsay, 91 Wn. App. at 951. The court held that as of October 1, 1991, Cathy and Murray were legally separated and their property divided, effective

immediately. Lindsay, 91 Wn. App. at 951. It explained that "[t]he agreement clearly reflects an intent to give up those rights which would normally follow legal spouses" and "showed an intent to prevent, waive, and abandon what a surviving spouse could normally take." Lindsay, 91 Wn. App. at 951-52. Under the agreement, Cathy "effectively renounced the marriage and waived the statutory homestead allowance." Lindsay, 91 Wn. App. at 952.

The court rejected Cathy's argument that because the separation agreement did not specifically mention the homestead right, she was entitled to a homestead allowance. Lindsay, 91 Wn. App. at 951. It held that the homestead right could be waived by implication and the real question was whether the parties' actions evidenced a decision to renounce the community with no intention of resuming the marital relationship. Lindsay, 91 Wn. App. at 951. Because the separation agreement divided all property and waived all claims to the others' property and was never rescinded, revoked, or altered, that test was met. Lindsay, 91 Wn. App. at 952.

The same analysis applies in this case. Michael and Michelle's Separation Contract states that "[a]ll property which shall hereafter come to either party shall be his or her separate property and neither party shall hereafter have any claim thereto." This is similar to the separation agreement in Lindsay, which the court held "showed an intent to prevent, waive, and abandon what a surviving spouse could normally take." Lindsay, 91 Wn. App. at 952. As such, Michelle waived her marital right to intestate succession by entering into the Separation Contract.

Michelle argues that Brown and Lindsay are distinguishable because those cases dealt with the homestead right applicable to disinherited spouses, not the right to intestate succession. Although it is true that Brown and Lindsay do not address the rights of a surviving spouse to intestate succession, the analysis is still instructive. Both cases analyzed whether a separation contract that is a final settlement of a married couple's property and rights, effective even upon death, evidences an intent to waive the statutory marital rights of a surviving spouse. Michelle's right to intestate succession, like the homestead right, is a statutory marital right due to a surviving spouse. For that reason, Brown and Lindsay are persuasive.

Michelle also argues that the parties' subsequent actions in Brown and Lindsay were vital to the courts' conclusions that the disinherited spouse intended to waive the homestead right. Specifically, she highlights the fact that the spouses in those cases revoked their previous wills that named one another as beneficiaries and executed new wills that did not provide for any inheritance. By contrast, Michelle argues that after she and Michael signed the Separation Contract, they did not take any actions, such as executing a new will, that showed an intent to waive the right to intestate succession. But, the courts in Brown and Lindsay did not rely on the parties' subsequent actions. In each of those cases, the court reached its conclusion based on that the language of the separation agreements alone. Brown, 28 Wn.2d at 440 ("This conclusion [that the parties intended to waive the homestead right] is inescapable under the language that the agreement was to be binding on each of the parties, their heirs

11

and assigns forever."); Lindsay, 91 Wn. App. at 951 ("The *agreement* clearly reflects an intent to give up those rights which would normally follow legal spouses.") (emphasis added). The parties' subsequent actions, while further supporting their intent to waive their homestead rights, were not relied on to find waiver. Furthermore, in both Brown and Lindsay, a new will was necessary because the settlement agreement did not automatically disinherit the estranged spouses from one another's existing wills and the parties had to update their wills to reflect that intent. Here, Michael did not have a will and there is no evidence in the record that Michelle had one either, so there was nothing that needed modification. For these reasons, Michelle's attempt to distinguish Brown and Lindsay is not persuasive.

Finally, Michelle argues that even if she waived her right to intestate succession, remand is necessary to determine whether or not she and Michael intended to reconcile. She cites evidence in the record that Michael contacted his attorney on April 2, 2017, to ask that the dissolution be delayed, a no-contact order be removed, and a house in Leavenworth no longer be included in the Separation Contract. But even if this were evidence that Michael and Michelle intended to reconcile, it does not change the result. The Separation Contract states that it may be "terminated and modified *only* by a written document so reflecting, signed by both parties." (Emphasis added.) Michael's email to his attorney was not a modification or termination that was signed by both parties. Furthermore, any extrinsic evidence of Michael's intent to reconcile with Michelle after the execution of the Separation Contract is not needed where the intent of

the parties at the time of execution is clear, as is the case here. <u>Berg v. Hudesman</u>, 115 Wn.2d 657, 667, 801 P.2d 222 (1990) ("[E]xtrinsic evidence is admissible as to the entire circumstances under which the contract was made, as an aid in ascertaining the parties' intent."). For these reasons, we decline Michelle's request to remand for further fact-finding.

## ATTORNEY FEES

Michelle asks this court to award her attorney fees and costs on appeal and for the proceedings at the trial court under RCW 11.96A.150(1) and RAP 18.1(a). We deny her request.

Attorney fees may be awarded only when authorized by a contract, a statute, or a recognized ground of equity. <u>Labriola v. Pollard Grp., Inc.</u>, 152 Wn.2d 828, 839, 100 P.3d 791 (2004). RCW 11.96A.150(1) allows a court to award costs and reasonable attorney fees to any party in trust and estate disputes. It states, "[i]n exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved." RCW 11.96A.150(1).

Here, Michelle requested attorney fees in the trial court, but the trial court reserved its decision on fees. Because Michelle is not the prevailing party on the issue of waiver and her litigation of that issue does not benefit the estate, we decline to award her fees at trial or on appeal.

We reverse and remand to the trial court to grant Gloria's motion terminating Michelle's marital right to intestate succession.

_Smith, J._

WE CONCUR:

_Leach, J._

_Spearman, J._