IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Estate of<br><br>LARRY DEAN NIGGLI.<br><br>ROSEMARY NIGGLI,<br><br>       Appellant,<br><br>v.<br><br>DAWN LANDRUM,<br><br>       Respondent. | No. 84825-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, A.C.J. — Rosemary and Larry Niggli were a married couple who, for nearly the duration of their marriage, resided in a home that Larry owned as separate property. After Larry's death, Rosemary filed an action under the trust and estate dispute resolution act (TEDRA)[1] and sought an award in lieu of homestead exception as his surviving spouse. The trial court granted summary judgment dismissal of her TEDRA claims related to the residence based on a document she had signed at the request of a lending institution when the home was refinanced during the marriage. Rosemary assigns error to the summary judgment dismissal of her petition and asserts the bank document was not a waiver of her statutory rights as a surviving spouse under TEDRA. We agree. Accordingly, we reverse and remand for further proceedings.

---

[1] Ch. 11.96A RCW.

FACTS

Rosemary and Larry Niggli were married on October 2, 1999. Larry[2] had two children from a prior marriage, one of whom is Dawn Landrum. Rosemary had one child from a prior marriage, Michelle Atha. The couple lived together in a house that the parties do not dispute Larry had purchased prior to the marriage as his separate property. Larry took out a home equity line of credit against the property during the Nigglis' marriage in 2006 and refinanced the home in 2013. During the 2013 refinancing process, Boeing Employees' Credit Union (BECU), as the lender, required Rosemary to sign a preprinted form entitled "Non-Borrowing Person Signature Attachment" (BECU loan attachment). The form included the following language:

> NAME OF NON-BORROWING PERSON
> Rosemary J Niggli
>
> The non-borrowing person named above acknowledges that the real property described in the deed of trust attached hereto, and by this reference incorporated herein, is the sole and separate property of the borrower named above. The non-borrowing person will make no claim of title or interest therein. Acknowledgement of the deed of trust by execution of this addendum by the non-borrowing person is not to be construed as a liability for debt incurred by the borrower but is for the purposes of inducement to [BECU] to extend financing requested by the borrower so that the purchase or refinance may be closed.

(Some capitalization omitted.) Rosemary signed the form on November 27, 2013 in the presence of a notary. Other documents in that BECU refinancing paperwork listed both Larry and Rosemary individually as a "[b]orrower." On December 13,

---

[2] For clarity, because they share the same last name, we refer to Rosemary and Larry by their first names. No disrespect is intended.

the BECU loan attachment was recorded in Snohomish County under auditor file no. 201312030092.

In the months before Larry's death, he and Rosemary began living separately due to health concerns. Larry had previously been diagnosed with cancer and eventually needed full-time care. Rosemary underwent surgery in July 2021, and afterwards she resided with Atha.[3] On August 4, Larry signed a durable power of attorney for health care, naming Landrum as his attorney-in-fact. On October 8, Larry executed a last will and testament appointing Landrum as his personal representative, and a revocable transfer on death deed which granted the home to Landrum. That deed was recorded in Snohomish County three days later on October 11. The will left all of Larry's personal property to his children and grandchildren and stated that he "made provision[s] by other means for [his] wife Rosemary."[4] Larry passed away on November 5, 2021.

On December 1, Rosemary filed a petition in Snohomish County Superior Court to probate Larry's estate, apparently unaware of his October 2021 will. Landrum appeared in that case as the personal representative of Larry's estate and moved to admit his will. On December 17, Rosemary filed a separate TEDRA action[5] under a separate cause number. The TEDRA petition requested an award from Larry's property in lieu of a homestead exemption under ch. 11.54 RCW as his surviving spouse or, in the alternative, a ruling declaring the home a community

---

[3] Atha stated that Larry brought Rosemary to her house because he was unable to take care of her due to his own health concerns. Landrum acknowledges that Rosemary moved in with Atha, but states that the move was made "well before [Larry's] hospitalization" and that it was because Rosemary needed Atha's care.

[4] These provisions included two pensions and a life insurance policy.

[5] A TEDRA action is a claim made under ch. 11.96A RCW, which provides for judicial and non-judicial methods for the resolution of disputes involving trusts and estates.

property asset. She also filed a notice of lis pendens, notifying Landrum that the subject of the TEDRA action was to recover the title to or establish a lien on the home.

On February 23, 2022, the court conducted its initial hearing on the TEDRA petition and, after taking argument from the parties,[6] issued an order which set out a number of findings related to the marriage and assets. These included express findings that the home was "refinanced in July 2006 possibly with community property and then was refinanced again in 2013 possibly with community property" and that, while the transfer on death deed was recorded, "this however does not end the question as to whether Rosemary . . . had an interest in the real property by means of equitable lien." The order continued the matter for 90 days, sustained the lis pendens, and reserved all relief sought by the parties, including sanctions. Shortly thereafter, in March 2022, Rosemary was diagnosed with dementia and Atha and her family began to provide full-time, live-in care for her.

In May 2022, the court issued an order that reserved ruling on Landrum's motion to admit the will[7] and sua sponte appointed Landrum as the administrator of the separate property portion of Larry's estate and Atha as Rosemary's guardian ad litem after concluding that Rosemary had insufficient capacity to continue as the administrator of Larry's estate. This order directed Landrum to "make payments upon the mortgage" and that "no further payments shall be made at this

---

[6] The transcript of the hearing was not provided to this court.

[7] The parties appear to agree this is what occurred at this stage of proceedings. Further, the caption of this order includes "Order on Motion to Admit Will" among the several motions before the court. Item seven in the order expressly notes that the court is reserving "any further ruling on any other issue presented in this motion," which presumptively includes the motion to admit the will.

time from the estate account." Landrum then refinanced the home as community property with her husband.

On August 8, 2022, Landrum filed a motion for summary judgment dismissal of all TEDRA claims related to the home, asserting that Rosemary had disclaimed her interest in the home by signing the BECU loan attachment which Landrum averred acted as both a waiver and a quitclaim deed, and that the transfer on death deed was valid. In response, Rosemary asserted an equitable community interest in the home and denied that the BECU loan attachment acted as either a waiver or a deed. Both parties sought attorney fees and sanctions.

On December 8, 2022, the court granted Landrum's motion for summary judgment, finding that the BECU loan attachment was a "written acknowledgement and waiver of all claims of title or interest" in the property and met the general statutory requirements for a deed under RCW 64.04.020 and, more specifically, a quitclaim deed under RCW 64.04.050. The court found that Rosemary was competent at the time she signed the BECU loan attachment and that she made the waiver "knowingly, intelligently, and voluntarily." The December 2022 order dismissed without prejudice Rosemary's claims arising from any community interest in the home, but directed that any future claim she might make for continuing support must exclude the value of the home. The court also concluded that Larry "possessed [t]estamentary [c]apacity at the time he executed the

[t]ransfer on [d]eath [d]eed" and that the "[t]ransfer on [d]eath [d]eed is valid on its face."[8]

Rosemary timely appealed.

ANALYSIS

In her motion for summary judgment, Landrum requested that the home be excluded from any calculations of a homestead award because Rosemary disclaimed her interest in Larry's separate property when she executed a legally binding waiver of that right through the BECU loan attachment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." CR 56(c). Although summary judgment proceedings generally preclude findings of fact by the court, under the plain language of TEDRA, if a jury is not demanded, the court is required to "try the issues, and sign and file its finding and decision in writing." RCW 11.96A.170. The statute also mandates that the initial hearing on a TEDRA petition "be a hearing on the merits to resolve all issues of fact and all issues of law." RCW 11.96A.100(8). Because a TEDRA action is a "special proceeding under the civil rules of court," its statutory provisions "control over any inconsistent provisions of the civil rules." RCW 11.96A.090(1). In view of that statutory language, despite the fact that this matter was resolved on summary judgment, the trial court acted properly in issuing findings of fact.

---

[8] Although Rosemary argued in her opposition to summary judgment that, in the alternative, the transfer on death deed should be invalidated due to undue influence, she does not challenge the court's conclusion on that issue in this appeal.

This court reviews summary judgment motions de novo, "engaging in the same inquiry as the trial court." *In re Est. of Gillespie,* 12 Wn. App. 2d 154, 166, 456 P.3d 1210 (2020). "Summary judgment is appropriate only when there are no genuine issues of material fact." *Erhart v. King County*, 195 Wn.2d 388, 410, 460 P.3d 612 (2020). The moving party bears the initial burden to demonstrate there is no genuine issue of material fact. *Welch v. Brand Insulations, Inc.*, 27 Wn. App. 2d 110, 115, 531 P.3d 265 (2023). If the moving party meets this burden, "then the burden shifts to the nonmoving party to 'set forth specific facts evidencing a genuine issue of material fact for trial.'" *Id.* (quoting *Schaaf v. Highfield*, 127 Wn.2d 17, 21, 896 P.2d 665 (1995)). "All facts and reasonable inferences must be interpreted in the light most favorable to the nonmoving party." *Gibson v. Costco Wholesale, Inc.*, 17 Wn. App. 2d 543, 555-56, 488 P.3d 869 (2021).

I. Award in Lieu of Homestead

Rosemary petitioned for an award in lieu of homestead and argued in the alternative that Larry's real property had been converted to a community property asset based on commingling of community funds. An award in lieu of homestead is a type of TEDRA claim authorized under RCW 11.54.010. The statute permits the surviving spouse to petition the court for an award from the property of the decedent. RCW 11.54.010(1).

The award in lieu of homestead exemption takes "priority over all other claims made in the estate" and "the claimant is to be treated as a general creditor of the estate." RCW 11.54.060. The homestead exemption amount is generally the greater of $125,000 or the county median sale price of a single-family home in

the preceding calendar year. RCW 6.13.030. However, the statutes addressing awards for the support of surviving family members provide factors that a trial court may consider in increasing or decreasing the amount of the award. RCW 11.54.040, .050. "The law favors awards in lieu of homestead as a matter of right for the protection of the surviving spouse and as a measure of fairness." *In re Est. of Garwood,* 109 Wn. App. 811, 814, 38 P.3d 362 (2002). In fact, safeguards for surviving spouses are of such high priority in Washington that "the "fact that granting an award in lieu of homestead may interfere with the testamentary plan of a decedent is not a reason to reduce or deny the award." *In re Est. of Lindsay*, 91 Wn. App. 944, 950, 957 P.2d 818 (1998). In combination, these provisions provide significant protection to surviving spouses with regard to an award in lieu of homestead.

The presumption in Washington regarding the character of property is that all assets acquired during the marriage are community property, irrespective of how the asset is titled. RCW 26.16.030. But the statutory scheme clarifies that property acquired prior to the marriage is considered separate property. RCW 26.16.010. However, separate property may be converted into a community property asset if it "becomes so commingled that it is impossible to distinguish or apportion it." *In re Marriage of Chumbley*, 150 Wn.2d 1, 5-6, 74 P.3d 129 (2003). Even though Larry owned the home prior to his marriage to Rosemary, she presented evidence that they used their joint income and labor to maintain it, including declarations and bank records establishing that she and Larry shared bank accounts held in both of their names and another declaration asserting that

her income went into a checking account that she shared with Larry and that the money from this shared account was used to pay the debts against the house. Rosemary asserted community income was used to pay the mortgage and perform maintenance and repairs on the home during the marriage. In its order granting summary judgment, the trial court acknowledged that mortgage payments were made by the Niggli marital community. Rosemary also provided documentation establishing that she and Larry both signed the 2013 BECU refinancing deed of trust form as "borrowers." This evidence raises a genuine issue of material fact as to whether the home was Larry's separate property at the time of his death. Consequently, the court erred in granting summary judgment on this basis.

Even if the home was Larry's separate property, it may still be used in the calculation of an award in lieu of homestead pursuant to the plain language of the statute. RCW 11.54.010(2) ("The award may be made from either the community property or separate property of the decedent."). The order on summary judgment does not contradict this statutory provision generally, but rather, concludes that Rosemary may not reach Larry's separate property in these circumstances because she waived all rights to it when she signed the BECU loan attachment. The crux of Rosemary's argument on appeal is that the document she signed pursuant to the refinancing of the marital home was not a broad waiver of any and all interest in the house or real property in question, particularly in an award in lieu of homestead as a surviving spouse.

II.    Marital Agreement

Although an award in lieu of homestead is favored, a surviving spouse may be found to have waived the right to such a claim by an express waiver or conduct that abandons the right. *Lindsay*, 91 Wn. App. at 950. Here, the trial court specifically found that the BECU loan attachment acted as a "written acknowledgment and waiver of all [of Rosemary's] claims of title or interest in Larry Niggli's home and real property" without engaging in the proper legal analysis required for marital agreements. Rosemary alleges that the court's failure to apply the correct standard deprived her of the safeguards traditionally afforded to spouses. We agree.

Marital agreements are subject to the general principles of contract law. *In re Marriage of Obaidi*, 154 Wn. App. 609, 226 P.3d 787 (2010). As a type of marital agreement, postnuptial property settlements between spouses who have no intention to separate are subject to a standard that affords heightened protection for spouses. *See Friedlander v. Friedlander*, 80 Wn.2d 293, 299, 301, 494 P.2d 208 (1972). When a marital agreement functions to waive a spouse's statutory right to an equitable distribution, it is enforceable only "without the attendant dangers of abuse and overreaching by the dominant party." *In re Marriage of Matson*, 107 Wn.2d 479, 482, 730 P.2d 668 (1986). *Matson* provides a two-part test to determine the fairness and enforceability of a pre- or postnuptial agreement. *Id.* The first step considers whether the agreement is substantively fair, meaning "whether it provides a fair and reasonable provision for the party not seeking the agreement's enforcement." *In re Parentage of G.W.-F.*, 170 Wn. App. 631, 645,

285 P.3d 208 (2012). "The second prong requires the court to examine the procedural fairness of the contract by asking two questions: '(1) whether full disclosure has been made by the parties of the amount, character and value of the property involved, and (2) whether the agreement was entered into fully and voluntarily on independent advice and with full knowledge by both spouses of their rights.'" *Id.* (quoting *Matson,* 107 Wn.2d at 483).

Under this test, but within the procedural framework of summary judgment in a TEDRA petition, we must first determine if there is a genuine issue of material fact as to whether the provisions of the marital agreement contained in the BECU loan attachment were fair and reasonable to Rosemary because Landrum, as the personal representative of Larry's estate, is seeking its enforcement. Larry's will plainly states that he "made provision[s] by other means for [his] wife ROSEMARY." These provisions included two pensions and a life insurance policy. They do not include the home where Rosemary resided with Larry for almost the entirety of her 22-year marriage to him, which would mean concluding that the BECU loan attachment was a marital agreement that waived Rosemary's right to any interest in the residence would effectively leave her homeless after Larry's death. Combined, the facts of the exclusion of any provision in Larry's will regarding the shared home and the operation of the BECU loan attachment as a full waiver present a genuine issue of material fact about whether the BECU loan attachment, as a purported marital agreement, was fair and reasonable to Rosemary.

Further, Rosemary produced evidence of procedural unfairness should the BECU loan attachment be considered a marital agreement that broadly waived her rights as a surviving spouse. The evidence particularly addressed the voluntariness of her signature and her awareness of what the alleged waiver entailed, at least to the extent that it could be interpreted as a permanent release of any interest in her marital home. Rosemary produced multiple declarations that Larry maintained exclusive control over their finances. This evidence of control alone is sufficient to raise a genuine issue of material fact about whether Rosemary's signature on the BECU loan attachment was voluntary.

Most critically, there is no evidence that Rosemary received "independent advice" as required under *Matson* and *G.W.-F.*, and there remains a question of fact as to her knowledge of any spousal rights or protections she could be deemed to have permanently waived by signing the BECU loan attachment. *See Matson*, 107 Wn.2d at 487-88 (finding petitioner had not intelligently and voluntarily signed prenuptial agreement that shielded respondent's separate property from equitable division because she did not have time and opportunity to seek independent counsel); *In re Est. of Boston,* 80 Wn.2d 70, 74-75, 491 P.2d 1033 (1971) (holding decedent's statements of intention regarding his own separate property and his wife's did not constitute waiver because clear and explicit language of relinquishment was required).

Marital agreements are not removed, arm's-length transactions, but instead are rooted in the presumptive good faith and trust that the parties have toward each other as spouses. *See Friedlander,* 80 Wn.2d at 301 (holding dealings

between married parties not arm's-length transactions because of confidential nature of relationship and such transactions require "exercise of good faith, candor and sincerity in all matters bearing upon the proposed agreement"). "[W]here any question arises as to the good faith of any transaction between spouses . . . the burden of proof shall be upon the party asserting the good faith." RCW 26.16.210. The BECU loan attachment includes language that it was "for the purposes of inducement to [BECU] to extend financing requested by the [b]orrower so that the purchase or refinance may be closed." Landrum, as personal representative of Larry's estate, has the burden to establish that Larry acted in good faith when he obtained Rosemary's signature on the BECU loan attachment, particularly if the contention of the estate is that Larry intended Rosemary's signature on the BECU loan attachment to act as a broad waiver of her spousal rights to the home beyond the life of the loan from BECU. Rosemary's assertions to the contrary are sufficient to establish a genuine issue of material fact on whether her signature on the purported marital agreement was obtained in good faith.

III.    Waiver

"'A waiver is the intentional and voluntary relinquishment of a known right . . . . It may result from an express agreement, or be inferred from circumstances indicating an intent to waive.'" *In re Est. of Petelle,* 23 Wn. App. 2d 203, 212-13, 515 P.3d 548 (2022) (*Petelle* III) (quoting *Dombrosky v. Farmers Ins. Co of Wash.,* 84 Wn. App. 245, 255, 928 P.2d 1127 (1996)). "'The right, advantage, or benefit must exist at the time of the alleged waiver. The one against whom waiver is claimed must have actual or constructive knowledge of the existence of the right.'"

*Bainbridge Island Police Guild v. City of Puyallup*, 172 Wn.2d 398, 410, 259 P.3d 190 (2011) (quoting *Bowman v. Webster*, 44 Wn.2d 667, 669, 269 P.2d 960 (1954)). Generally, whether waiver has occurred is a question of fact "'unless reasonable minds could reach but one conclusion.'" *Renfro v. Kaur*, 156 Wn. App. 655, 661, 235 P.3d 800 (2010) (quoting *Harmony at Madrona Park Owners Ass'n v. Madison Harmony Dev., Inc.*, 143 Wn. App. 345, 361, 177 P.3d 755 (2008)). Specifically, with regard to the rights of a surviving spouse in a TEDRA action, "'[a]bsent the most clear and explicit language confirming a voluntary relinquishment of the award as a known right, a waiver will not be found.'" *Hein*, 17 Wn. App. 2d at 260 (quoting *Boston*, 80 Wn.2d at 75).

A waiver of interest in the home as it relates to refinancing does not address whether Rosemary knowingly waived all claims to the home *related to an interest in an award in lieu of homestead as a surviving spouse*. Case law in circumstances where courts have concluded that the statutory protections of ch. 11.54 RCW *were* waived are instructive, often when the waiving spouse signed an agreement specifying that the settlement addresses both marital and property rights. For example, in the series of cases dealing with the estate of Michael Petelle, Michael and Michelle Petelle entered into a separation agreement under CR 2A, but Michael died before the marriage was dissolved, so Michelle was his surviving spouse despite the steps they had taken toward divorce. *In re Est. of Petelle*, 8 Wn. App. 2d 714, 716-17, 440 P.3d 1026 (2019) (*Petelle* I). In the first opinion in that case, this court determined that the separation agreement executed between the Petelles as a step toward the dissolution of their marriage constituted a waiver

of Michelle's homestead allowance because the CR 2A agreement expressly included verbiage that it was a "'complete and final settlement of all [of the parties'] *marital* and property rights and obligations.'" *Id*. at 723 (emphasis added).

Our analysis in *Petelle* I primarily relied on two cases: *In re Estate of Brown*, 28 Wn.2d 436, 183 P.2d 768 (1947) and *Lindsay*. Both cases involved situations where the surviving spouse had negotiated and executed an agreement pertaining to marital rights and property. *See Brown*, 28 Wn.2d at 440 (reasoning that intention to make separation agreement created waiver of right of homestead regardless of which spouse died first); *Lindsay*, 91 Wn. App. at 951-52 (concluding that undisputed separation agreement between parties created implied waiver of homestead award because it clearly reflected intent to give up rights that would normally follow spouses). Our Supreme Court affirmed *Petelle* I and further explained that the express provisions of the separation agreement that anticipated the possibility of death prior to final dissolution indicated that the parties had constructive knowledge of the rights and benefits that a surviving spouse could accrue upon death. *In re Est. of Petelle*, 195 Wn.2d 661, 669, 462 P.3d 848 (2020) (*Petelle* II).

In contrast, the BECU loan attachment that Rosemary signed makes no mention of the protections that TEDRA provides to surviving spouses or the specific right to an interest in a decedent spouse's separate property. The trial court relied on the plain language of the BECU loan attachment to conclude that Rosemary executed a waiver, but a valid waiver requires the voluntary relinquishment of a *known* right and the attachment does not expressly mention

death, survivorship, or the spousal protections under ch. 11.54 RCW. The BECU loan attachment includes neither language regarding Rosemary's marital rights broadly nor an intent to relinquish them, as required by the cases analyzed herein. Nor does the BECU loan attachment indicate that it was meant to be a conclusive or final agreement between the parties as spouses. In fact, again, the BECU loan attachment specifically states that Rosemary's signature is *"for the purposes of inducement to* [*BECU*] *to extend financing* requested by the [b]orrower so that the purchase or refinance may be closed." (Emphasis added.) This language is evidence that Rosemary intended to sign the BECU loan attachment only for that purpose and not as a broad waiver of her spousal rights under Washington law generally. The absence of any language in the BECU loan attachment regarding the possibility of death prevents any inference from that document that Rosemary had constructive knowledge of her rights as a surviving spouse.

The trial court found that Rosemary's "waiver was made knowingly, intelligently, and voluntarily," but the only basis provided for this finding was that she was not suffering from cognitive difficulties or incompetence, which is not evidence that she made a knowing waiver of statutory rights as a surviving spouse that were not mentioned anywhere in the BECU loan attachment. Rosemary cannot waive rights that she did not know she had. *Petelle* III, 23 Wn. App. 2d at 212 (waiver requires "'intentional and voluntary relinquishment of a *known* right.'" (emphasis added) (quoting *Dombrosky*, 84 Wn. App. at 255)). The BECU loan attachment acknowledges that the home was Larry's separate property, but that alone is insufficient to constitute a waiver of Rosemary's spousal rights to the asset

in a TEDRA petition subsequent to Larry's death. The absence of this required information in the BECU loan attachment is separately sufficient to establish a question of fact about whether she knowingly waived her statutory rights under TEDRA and, thus, summary judgment was improper.[9]

Finally, Rosemary assigns error to the trial court's conclusion that the BECU loan attachment also operated as a quitclaim deed under RCW 64.04.050. Because our conclusion as to the propriety of any purported waiver or marital agreement is dispositive in this case, we need not reach this challenge. Again, absent express language or conduct that Rosemary waived her interest in the home, specifically under TEDRA as a surviving spouse, *even if it was Larry's separate property*, a quitclaim deed would not extinguish such an interest in a TEDRA action. The plain language of RCW 11.54.010(2), that "the award may be made from either the community property or separate property of the decedent" establishes that even if she had quitclaimed any community interest in the home to Larry by signing the BECU loan attachment, that alone would not prevent her from seeking an award in lieu of homestead as his surviving spouse. Accordingly,

---

[9] Additionally, the BECU loan attachment was accompanied by the deed of trust that described the home and listed the "[b]orrower" as "Larry D. Niggli, a married man, as his separate estate." (Some capitalization omitted). However, that same deed of trust is signed by both Larry and Rosemary and designates each of them as a "[b]orrower." The inconsistent framing of the spouses' respective interests in the home, at a minimum, raises a genuine issue of fact as to how BECU characterized the asset for purposes of refinancing. While the lender's characterization is by no means controlling, it is clear that the court relied on the language in one document related to the BECU loan in reaching its ultimate conclusion, despite other related documents that could support a different outcome. This suggests weighing of evidence, which is improper at the summary judgment stage, and the court offers no reasoning to explain why it would credit the titles and roles of the parties in some of the banking documents over others that were contradictory. The inconsistencies in the totality of the BECU loan documents likewise present a genuine issue of material fact as to whether one of them alone constituted a valid marital agreement.

the trial court's conclusion that the BECU loan attachment acted as a quitclaim deed is irrelevant.

Genuine issues of material fact exist as to whether Rosemary knowingly waived her rights to the marital home as a surviving spouse when she signed the BECU loan attachment pursuant to the 2013 refinance of the home during the course of her marriage to Larry. Summary judgment of Rosemary's TEDRA action was improper.

Reversed and remanded.[10]

WE CONCUR:

---

[10] During oral argument before this court, Landrum's attorney sought an award of attorney fees on appeal. Wash. Ct. of Appeals oral argument, *In re Est. of Niggli*, No. 85825-9-I (Jan. 25, 2024), at 17 min., 25 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2024011619. We decline to entertain the request presented for the first time at oral argument because our rules expressly require presentation of fee requests in briefing. RAP 18.1(a), (b) ("If applicable law grants to a party the right to recover reasonable attorney fees or expenses on review . . . . The party must devote a section of its opening brief to the request for the fees or expenses.").

Separately, a fee award would be improper as Landrum does not prevail on appeal.